RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0225p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

KATRINA MCGREW,

                  *Plaintiff-Appellee*,

     *v.*

SERGEANT DUNCAN, et al.,

                  *Defendants-Appellants*.

No. 18-2022

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-10978—Denise Page Hood, Chief District Judge.

Argued:  May 1, 2019

Decided and Filed:  September 4, 2019

Before:  DAUGHTREY, COOK, and GRIFFIN, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:**  Linda D. Fegins, CITY OF DETROIT LAW DEPARTMENT, Detroit, Michigan, for Appellants.  Solomon M. Radner, EXCOLO LAW, PLLC, Southfield, Michigan, for Appellee.  **ON BRIEF:**  Linda D. Fegins, CITY OF DETROIT LAW DEPARTMENT, Detroit, Michigan, for Appellants.  Solomon M. Radner, Rebeca Martinez Sicari, EXCOLO LAW, PLLC, Southfield, Michigan, for Appellee.

───────────────

## OPINION

───────────────

GRIFFIN, Circuit Judge.

A group of masked City of Detroit police officers broke down plaintiff Katrina McGrew's door, threw her to the ground, and handcuffed her so tightly it left bruises.  When she

complained about how constricting the handcuffs were, the officers threatened her life. She sued the officers pursuant to 42 U.S.C. § 1983 and Michigan law. They now appeal the district court's denial of their motions for summary judgment based upon qualified immunity and governmental immunity. We affirm, dismiss the appeal in part for lack of jurisdiction, and remand for further proceedings consistent with this opinion.

I.

On the eve of Thanksgiving in 2014, Katrina McGrew was busy preparing the next evening's dinner when the Detroit Police Department executed a search warrant on her home. As she stood in her kitchen stirring macaroni, she heard a bang at the front door. When she went to investigate, she saw defendants, a group of Detroit Police Officers, standing in her living room. They were wearing all black. Masks concealed their faces. She could see only their eyes.

One of the officers threw her to the ground, put his knee in her back and handcuffed her. The handcuffs were tight, and McGrew so advised the officer. He responded: "[S]hut up, b----, you shouldn't be so fat." When she complained to the same officer a second time, he responded: "[I]f you don't shut your f---ing mouth I can blow your head off and nothing can be done."

The police seized a bag of marijuana and a pistol, which they documented on the search-warrant return. They also allegedly seized, but did not mention, another gun, a pair of diamond earrings, a Samsung Galaxy S4 tablet, and a new-in-the-box Samsung Galaxy S5 phone. No records show these seizures or return of the property.

A few days later, McGrew went to the hospital for injuries she sustained during the raid. She was diagnosed with musculoskeletal strain in her chest and ecchymosis (bruising) on her right wrist.

McGrew sued the officers and the Detroit Police Department, asserting constitutional claims of excessive force and deliberate indifference as well as various state-law claims. Defendants moved for summary judgment on all claims, arguing that they were entitled to qualified immunity on the § 1983 claim and governmental immunity on the state-law claims. The district court denied qualified immunity, governmental immunity, and summary judgment

on McGrew's § 1983 excessive-force claim and state-law claims for assault, battery, and conversion. The district court, however, granted summary judgment in favor of the Detroit Police Department and in favor of the officers on plaintiff's claim for intentional infliction of emotional distress.

The defendant officers now appeal; plaintiff McGrew does not cross-appeal.

II.

We begin with McGrew's § 1983 excessive-force claim and the officers' contention that they are entitled to qualified immunity. Qualified immunity shields the officers from suit if (1) they did not violate any of McGrew's constitutional rights or (2) the violated rights, if any, were not "clearly established" when they acted. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

One variant of McGrew's claim stems from how tightly the officers handcuffed her. To succeed on it, she must prove that she complained about the tightness of the handcuffs, the officers ignored her complaint, and the handcuffs caused a physical injury. *Morrison v. Bd. of Trs.*, 583 F.3d 394, 401 (6th Cir. 2009). The officers do not dispute that McGrew complained and that they did not loosen the handcuffs. So whether they are entitled to qualified immunity turns on whether McGrew suffered an injury and whether the right she claims they violated was clearly established when they acted.

On these two points, the officers present essentially the same argument: bruising is not enough. They contend that "[h]andcuffing that results in bruising does not violate any clearly established constitutional right" and "[t]here was no manifest evidence of a clear physical injury." This argument is without merit. In *Morrison*, we held that "allegations of bruising and wrist marks create a genuine issue of material fact" on whether a plaintiff has suffered a physical injury. 583 F.3d at 403. Thus, under *Morrison*, bruising *is* enough. That means McGrew has created a genuine issue of material fact regarding whether the officers violated her right to be free from excessively tight handcuffing that causes physical injury. Further, because we decided *Morrison* before the events in this case, McGrew's right was clearly established at the time defendants acted. Thus, the officers are not entitled to qualified immunity on this variant of McGrew's excessive-force claim.

McGrew raises another excessive-force claim—one arising from an officer allegedly throwing her to the ground to handcuff her. Although she asserts this claim in her complaint, and argued it in opposition to the officers' motion for summary-judgment, the district court did not rule on whether the officers are entitled to qualified immunity on it. Under these circumstances, we deem it prudent to direct the district court to address the issue on remand.

Finally, we note a third variant of McGrew's excessive-force claim—one she raises for the first time on appeal. Despite her complaint's silence on the topic, McGrew argues in her appellate brief that the officers had no reason to handcuff her and that doing so itself amounted to excessive force. But an amended complaint, not an appellate brief, is the vehicle with which to add new claims. *See Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 328–29 (6th Cir. 2006). If McGrew wishes to pursue this claim, she should move in the district court to amend her complaint.

III.

Next, we turn to McGrew's state-law claims, on which the officers assert they are entitled to governmental immunity. Just as qualified immunity protects officials from federal claims, Michigan's governmental immunity shields officials from state claims if (1) the officials acted during the course of their employment and were, or reasonably believed they were, within the scope of their authority; (2) they acted in good faith; and (3) their acts were discretionary instead of ministerial. *Odom v. Wayne Cty.*, 760 N.W.2d 217, 224–26 (Mich. 2008).

Here, McGrew brought a handful of state claims arising from different harms. Her assault claim, for example, flows from the officers allegedly throwing her to the ground. Her battery claim stems from both the throw to the ground and the allegedly tight handcuffs. And her conversion claim comes from the officers allegedly taking two pistols, diamond earrings, a tablet, and a phone.

The officers contend that they are immune from these claims, but discuss only the handcuffing variant of the battery claim. By not contending that governmental immunity shields them from the other battery claim, the assault claim, and the conversion claim, the officers have abandoned such arguments. "A party may not present a skeletal argument, leaving the court to

put flesh on its bones." *Ruffin v. Cuyahoga Cty.*, 708 F. App'x 276, 278 (6th Cir. 2018) (citing *United States v. Hendrickson*, 822 F.3d 812, 829 n.10 (6th Cir. 2016)).  And here the officers have not presented any argument at all—much less a skeletal one.

That leaves the tight-handcuffing variant of McGrew's battery claim.  Governmental immunity does not protect the officers from this claim because McGrew has produced evidence suggesting that the officer who handcuffed her tightened the handcuffs in bad faith.  She testified that when she complained twice about the handcuffs' tightness, the officer said "shut up, b----, you shouldn't be so fat" and "if you don't shut your f---ing mouth I can blow your head off and nothing can be done."  Under these facts, it is difficult for us to imagine a clearer example of bad faith.

IV.

Finally, we note that defendant officers' other arguments are ones we lack jurisdiction to consider.

*Jurisdiction on McGrew's Federal Claim*.  In interlocutory appeals, defendants "may not appeal a district court's summary[-]judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." *Johnson v. Jones*, 515 U.S. 304, 319–20 (1995).  Thus, we may examine only purely legal questions. *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006).  Yet the officers ask us to reweigh the facts.  They assert qualified immunity on McGrew's § 1983 excessive-force claim primarily on the basis that she is unable to positively identify the defendant who handcuffed her.  She testified that the officer was a "light-skin[ned] black guy" about six feet two inches tall.  The officers emphasize that none of them match that exact description.

The legal question here is one we have answered before:  If officers actively conceal their identities by wearing masks, and if that concealment prevents a plaintiff from identifying which officer violated her rights, she may get to a jury if she can create genuine factual issues regarding the officers' presence at the scene. *See Burley v. Gagacki*, 729 F.3d 610, 622 (6th Cir. 2013); *see also Greer v. City of Highland Park*, 884 F.3d 310, 316 (6th Cir. 2018).  And on this record, the

trier of fact may decide liability because the officers actively concealed their identities by wearing masks, and none disputes his presence at the scene.

But the officers do not ask us to apply a different legal standard.  Rather, they ask us to quibble with the district court's factual findings.  When they raised their argument below, the district court ruled that the evidence, viewed in the light most favorable to McGrew, created a genuine issue of material fact regarding the identity of the officer who handcuffed her.  In doing so, the court refused to dismiss specific officers because it would require speculation as to what McGrew meant by "light skinned."  Instead of accepting the district court's conclusion, though, the officers provide pictures of their faces—unmasked, of course—and argue repeatedly that each officer "cannot reasonably be found to fit the description of a 6'2" light-skinned black man."  In other words, the officers ask us to go outside the record to make factual findings the district court never made—findings the court specifically declined to make given the uncertainty it saw in the record.  (Indeed, that uncertainty stems from defense counsel's failure to ask McGrew how she could tell that the officer who handcuffed her was "light skinned" or what she meant by that description.  McGrew also testified that she could see only the officers' eyes, and the record contains no other information on how much of each officer's face the masks concealed.)  We therefore lack jurisdiction to consider this argument.

*Jurisdiction on McGrew's State Claims*.  In a federal-question action involving pendent state claims, we look to state immunity law to determine whether a denial of state-law immunity is appealable.  *See Walton v. City of Southfield*, 995 F.2d 1331, 1343 (6th Cir. 1993), *superseded by court rule on other grounds as recognized in Livermore v. Lubelan*, 476 F.3d 397, 407–08 (6th Cir. 2007).  And when it comes to Michigan law, we have held that, because the denial of governmental immunity is a "final order" that provides defendants with an appeal of right to the Michigan Court of Appeals, we have jurisdiction over interlocutory appeals involving pendent state-law claims of governmental immunity.  *See Livermore*, 476 F.3d at 407–08.

But the same is not true for appeals of ordinary summary-judgment denials.  Instead, the doctrine of pendent appellate jurisdiction allows us, in our discretion, "to exercise jurisdiction over issues that are not independently appealable when those issues are 'inextricably intertwined'" with issues we have jurisdiction to consider.  *Chambers v. Ohio Dep't of Human*

*Servs.*, 145 F.3d 793, 797 (6th Cir. 1998)  To be so intertwined, a claim must be "coterminous with" or "subsumed in" a claim within our jurisdiction. *Id*.  Put differently, we must be unable to resolve the properly appealable issue without addressing the nonappealable one. *Id*.

Here, the officers' governmental-immunity arguments do not subsume their generic-summary-judgment ones, and the two categories of arguments do not share the same boundaries that coterminous ones would.  Governmental immunity hinges on *how* the officers acted—the scope of their actions, the attitude with which they took them, and the leeway they had to so act, *see Odom*, 760 N.W.2d at 224–26 (discussing the elements of governmental immunity for intentional torts), while the officers' summary-judgment arguments turn on *what* they did.  They contend that "there is no evidence to show that any particular individual officer battered or assaulted plaintiff" and that "[t]here certainly is no evidence to show that any individual officer personally exerted any act of dominion over [McGrew's] personal property or converted any of her property."  Indeed, in the headings for their arguments, they state that they are "entitled to summary judgment *for want of a genuine issue of material fact*."  Because we can resolve the governmental-immunity issues without resolving summary-judgment ones, we lack jurisdiction to consider the latter.

V.

For these reasons, we affirm the denial of qualified immunity and governmental immunity, dismiss in part the officers' appeal for lack of jurisdiction, and we remand for the district court to consider the variant of McGrew's excessive-force claim stemming from an officer throwing her to the ground and for further proceedings consistent with this opinion.