NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0388n.06

No. 20-2076

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| HENRY L. HILL; DIANNE HILL, | ) | **FILED**<br>Aug 18, 2021<br>DEBORAH S. HUNT, Clerk |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CRAIG WHITFORD; CITY OF LANSING, | ) | COURT FOR THE WESTERN |
| MICHIGAN, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: GUY, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

A City of Lansing employee investigated a complaint about unsanitary conditions at one of plaintiffs' multi-use buildings and ultimately deemed several as uninhabitable following his inquiry. Plaintiffs contend the employee's warrantless intrusion upon their property violated the Fourth Amendment, and that the City prevented their property use without due process as guaranteed by the Fourteenth Amendment. The district court entered judgment in defendants' favor, and we affirm.

I.

The underlying events at issue in this case occurred over twelve years ago. Defendant Craig Whitford, a Building and Housing Code Compliance Officer for the City of Lansing, received a complaint on March 26, 2009, about sewage at 909 E. Saginaw Street. Plaintiff Henry

Hill (along with his wife, Dianne) owns that property, which has commercial units on the ground floor and residential units above. Whitford informed Hill that he needed to investigate and the two agreed to meet at the property the following day.

Their agreement notwithstanding, both found themselves at 909 E. Saginaw Street a short time later that day. Whitford went to the property (with a coworker) to address its other known compliance issues, and ran into Hill. Whitford first asked Hill for permission to access the basement, and then, according to Hill, ultimately declared that "he needed to get into the basement, otherwise he would call the police." Because the basement door was locked, Hill arranged for a key to be delivered to the property. Upon entry, they discovered that the basement had "a couple of inches of raw sewage," "possibly as high as the top of the first cinderblock on the wall." They also observed gas-powered equipment (a lawnmower and some chainsaws), gas cans, and propane tanks stored in the basement and concluded their presence—along with the sewage water and the water heaters in the basement—created a hazardous situation. So Whitford "red-tagged" the entire building as unoccupiable under the City's Building and Housing Code.

Shortly after Whitford left that building, an unidentified man from an adjacent building also owned by the Hills, 923 E. Saginaw Street, flagged Whitford down. That man told Whitford that he "was getting ready to move his family into the home" and that it "had no heat." Whitford checked that the utilities were on and saw a heavy blanket across the opening for the front door. The man invited Whitford inside, wherein Whitford discovered electric space heaters and a malfunctioning furnace. So Whitford issued a correction notice, which eventually became a ticket for non-compliance after the Hills had exceeded the time necessary to bring the premises into compliance.

Based on these and other facts not relevant to this appeal, plaintiffs began this civil-rights action in 2012. The operative complaint raised numerous § 1983 claims against Whitford, the City of Lansing, and other defendants, including those we address today: unlawfully entering 909 and 923 E. Saginaw Street without a warrant in violation of the Fourth Amendment; ordering the Hills to vacate 909 and 923 E. Saginaw Street in violation of the Fourteenth Amendment's due-process guarantees; and a derivative *Monell* claim challenging the City's code-enforcement practices. In 2014, the district court granted summary judgment in defendants' favor on these claims (but not others). The case ground to a halt in May 2015 when it was stayed pending resolution of another matter also involving the City of Lansing's code-enforcement process. *See Gardner v. Evans*, 811 F.3d 843 (6th Cir. 2016) ("*Gardner I*"); *Gardner v. Evans*, 920 F.3d 1038 (6th Cir. 2019) ("*Gardner II*"). Following those decisions, the district court reopened the case and eventually denied plaintiffs' motion to reconsider its grant of summary judgment in defendants' favor, and then entered judgment in defendants' favor. Plaintiffs timely appeal.

## II.

We review a district court's grant of summary judgment de novo. *Keith v. Cnty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To prevail, the nonmovant must show sufficient evidence to create a genuine issue of material fact," which is to say, "[t]here must be evidence on which the jury could reasonably find for the [nonmovant]." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted and last alteration in original). "We consider all facts and inferences drawn therefrom in the light most favorable to the nonmovant." *City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001).

III.

Plaintiffs first contend that Whitford's warrantless entry into the two properties violated the Fourth Amendment, which applies to government agents entering for purposes of evaluating housing-code compliance. *See, e.g.*, *Camera v. Municipal Ct. of City and Cnty. of S.F.*, 387 U.S. 523, 534 (1967); *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015).

*909 E. Saginaw Street.* Hill claims he consented under duress to Whitford's entry into 909 E. Saginaw Street, which would render Whitford's entry unconstitutional. Viewing the totality of the circumstances, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973), the district court disagreed because Hill "knew it was important for Whitford to access the property, . . . was aware of water in the basement, and . . . had scheduled a meeting with Whitford at the property the following day, statements and conduct that all belie any consequence to Whitford's purported statement that he could contact the police." Although our review of this conclusion is for clear error, *see United States v. Worley*, 193 F.3d 380, 384 (6th Cir. 1999), we agree that the totality of the circumstances indicates Hill did not consent under duress and therefore discern no error. The only fact weighing in Hill's favor is Whitford's statement that "he needed to get into the basement[,] otherwise he . . . would call the police." But Whitford was certainly permitted to give Hill that option, and "[i]t is well-settled that [an] agent's statements to the effect that he would obtain a warrant if [a person] did not consent to the search does not taint [the] consent to a search." *United States v. Salvo*, 133 F.3d 943, 954 (6th Cir. 1998) (collecting cases).

*923 E. Saginaw Street.* Whitford entered this property after receiving permission from an unknown tenant who flagged him down following a no-heat complaint. That tenant was capable of validly consenting to the search. *See United States v. Elkins*, 300 F.3d 638, 647 (6th Cir. 2002). Relying on an affidavit filed by one of the building's tenants that did not counter the no-heat or

"flagged down" premise and instead just stated generally that Whitford came in and inspected his "house without [his] permission," plaintiffs challenge on appeal the district court's consent finding. But on these sparse facts, the district court appropriately entered judgment in Whitford's favor. At the very least, plaintiffs have failed to satisfy their burden to identify a controlling case establishing that every reasonable officer would know that Whitford's entry violated clearly established law. *See, e.g.*, *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam).

## IV.

We turn next to plaintiffs' Fourteenth Amendment pre-deprivation procedural-due-process claims.[1] The government ordinarily must provide notice and a hearing prior to eviction from a property, but it need not do so in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972) (citation omitted). This exception operates when there is "a special need for very prompt action to secure an important public interest and where a government official is responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in a particular instance." *Flatford v. City of Monroe*, 17 F.3d 162, 167 (6th Cir. 1994); *see also Gardner II*, 920 F.3d at 1057–58. "[S]o long as the state provides an adequate postdeprivation procedure," this exception satisfies due process. *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994).

Plaintiffs' arguments on appeal center on Whitford's conclusion that the living conditions at 909 and 923 E. Saginaw Street necessitated immediate government intervention and therefore justified the lack of pre-deprivation opportunities. More specifically, they contend there are

---

[1]Plaintiffs' complaint asserted post-deprivation claims as well, which *Gardner II* subsequently foreclosed. 920 F.3d at 1061–62.

genuine disputes of material fact regarding the substance and sufficiency of Whitford's determinations. Fatal to this contention, however, is how plaintiffs litigated this claim below.

In response to Whitford's motion for summary judgment, plaintiffs offered no counterargument regarding Whitford's emergency-circumstances determination and focused instead on the general red-tagging appeal process, i.e., the post-deprivation aspect of their due-process claim. Recognizing plaintiffs' deficient response, the district court held that Whitford had discharged his initial burden under Federal Rule of Civil Procedure 56 and granted summary judgment in his favor. And it confirmed this holding on reconsideration, stating that "the issues of safety, the sewage, the gasoline, the furnace . . . all support the action of the . . . compliance officers here."

Having failed to substantively respond to Whitford's motion for summary judgment in this regard, plaintiffs forfeited these issues and arguments. *See Swanigan v. FCA US LLC*, 938 F.3d 779, 786 (6th Cir. 2019). To be sure, a district court may not use a party's failure to respond (in whole or in part) as a reason for granting summary judgment "without first examining all the materials properly before it under Rule 56(c)." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014) (citation omitted). But that is not what the district court did here. It indepedently reviewed the record and determined Whitford had discharged his summary-judgment burden. Plaintiffs "wagered" their case by failing to point the district court to the record evidence they contend show a genuine dispute of material fact, *Bormuth v. County of Jackson*, 870 F.3d 494, 500 (6th Cir. 2017) (en banc) (citation omitted), and we will not fault the district court for

failing to "comb the record from the partisan perspective of an advocate for the non-moving party," *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992).[2]

V.

We conclude by addressing plaintiffs' *Monell* claim that the City "fails to inform citizens of their rights to appeal," "promotes retaliatory use of [the City's] ordinances by its enforcement officers," "promotes the entry into privately owned dwellings under either the threat of arrest or the threat of loss of use of the premises," all of which allegedly "routinely results in unlawful entry and searches of privately owned property." The district court found the record evidence did not support the claim and granted judgment in the City's favor in summary fashion. Plaintiffs attack this conclusion on appeal, relying mainly on the fact that the City's correction notices did not expressly set forth an appeal process and by asserting (without any record support) that there is a "widespread failure of multiple code compliance officers to be []aware of the appeals process."[3] The district court was right to grant summary judgment in the City's favor on this claim for many reasons, not the least of which is that there can be no *Monell* liability given the lack of a constitutional violation. *See, e.g.*, *Thomas v. City of Columbus*, 854 F.3d 361, 367 (6th Cir. 2017). And *Gardner II* confirmed that the combination of the notices and the City's publicly available

---

[2]To the extent plaintiffs contend Whitford was required to provide them with pre-deprivation notice and an opportunity to be heard, we disagree. *Fuentes* confirms that upon a showing of "extraordinary situations"—like the one the Hills did not contest—a pre-deprivation hearing is not required. 407 U.S. at 90. Instead, all that is required is "an adequate postdeprivation procedure." *Harris*, 20 F.3d at 1401. And in *Gardner II*, we expressly approved of the City of Lansing's procedures for notifying property owners of their right to appeal for purposes of procedural due process. 920 F.3d at 1061–62.

[3]Plaintiffs also argue generally that the ordinance is "vague" and deviates from the International Property Maintenance Code, without specifically saying why this is the case, or why it matters for purposes of their *Monell* claim. It is not our responsibility "to put flesh on [the] bones" of such a "skeletal argument." *McGrew v. Duncan*, 937 F.3d 664, 669 (6th Cir. 2019) (citation omitted).

ordinance provides adequate notice for due-process purposes for property owners, like plaintiffs. 920 F.3d at 1061–62.

## VI.

For these reasons, we affirm the judgment of the district court.