RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0051p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

FRANK J. FISHER,

          *Plaintiff-Appellant*,

    *v.*

MICHELLE M. PERRON,

          *Defendant-Appellee*.

No. 21-1184

Appeal from the United States District Court for the Eastern District of Michigan at Port Huron.
No. 3:20-cv-12403—Robert H. Cleland, District Judge.

Decided and Filed:  March 23, 2022

Before:  GILMAN, STRANCH, and NALBANDIAN, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  James W. Rose, Ethan R. Holtz, JAFFE RAITT HEUER & WEISS, P.C.., Southfield, Michigan, for Appellee.  Frank J. Fisher, McLean, Virginia, pro se.

─────────────────

## OPINION

─────────────────

JANE B. STRANCH, Circuit Judge.  Frank J. Fisher alleges that his sister, Michelle M. Perron, violated federal and state law by recording various phone conversations among himself, Perron, and two other siblings that discussed their late mother's estate and related litigation.  The district court dismissed his complaint with prejudice for failure to state a claim.  Because the complaint fails to allege facts sufficient to state a claim under either the relevant state or federal laws, we **AFFIRM** the district court's dismissal of the case.

# I. BACKGROUND[1]

Fisher and Perron are siblings and children of the late Anne Markley Spivak.  Fisher is the personal representative of his mother's estate, and he serves as a co-trustee of the Anne M. Spivak Revocable Trust with Perron and Peter B. Spivak, Jr., his brother.  Fisher is also a co-trustee with his brother, Peter P. Perron, of the Anne M. Spivak Testamentary Trust.  Fisher and Michelle Perron have clashed over decisions related to these estate entities, and Fisher alleges that Perron intended to use these disagreements to gain a greater portion of Spivak's estate.  The conflicts about the estate, according to Fisher, led Perron to plan litigation against Fisher and the co-trustees of the trusts.

The heart of the complaint is Fisher's allegation, on information and belief, that Perron made "at least fourteen illegal recordings of telephone calls" with Fisher, either alone or with their other siblings, almost all of which related to the Spivak estate.  The recording of one call is certain:  a February 18, 2018 call between Perron and Peter Spivak in Michigan, Fisher in Virginia, and Peter Perron in Washington.  Perron did not inform any of the siblings that she was recording the call.  According to Fisher, the call included "private facts about [his] private life," including details about his legal conflicts with Perron over their mother's estate, information on the administration of the Spivak estate and Revocable Trust, and financial and tax information.  Perron shared her recording with her attorney and third parties.  The complaint alleges, on information and belief, that Perron recorded other calls without the consent of her siblings and shared those recordings with her attorney and third parties.

In September 2018, Perron sued Fisher as the representative of the estate, objecting to the petition for complete estate settlement filed in Wayne County Probate Court.  She also filed claims, petitions, and pleadings in two other proceedings in the probate court.  It was through this litigation that the recording of the February 18 call came to light.  In November 2018, Perron attached a transcript of the call, purported to be accurate and certified, to a probate-court pleading.  A month later, Perron filed the same transcript in a different probate-court proceeding. Fisher alleges that Perron used the transcript to support her theory in the probate action that

---

[1]We draw the facts from Fisher's complaint, taking all well-pleaded allegations as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Fisher was involved in conspiracy and fraud to improperly influence the administration of the Spivak estate.

Fisher alleges that the transcript was available to the public through probate-court records until August 2020, and that the transcript contained information that the call audio alone would not have provided. The transcript includes the date of the phone call and the speakers, even though the transcriber listed on the call was not present for the call and did not personally know the speakers or their names. These details, he alleges, show that Perron gave the identifications to the transcriber of the audio recording either personally or through her attorney.

Perron's filing of the transcript required Fisher to spend significant time defending against his sister's litigation that relied on the recording and made public what Fisher calls "false and frivolous allegations." Fisher alleges that the trial transcript contained private information that he would not have otherwise disclosed and that Perron knew that the call was intended to be private. He asserts that Perron "intended to use private information contained in the Sibling Calls to disclose private information publicly, and to embarrass, damage, and manipulate [Fisher], particularly with respect to their mother's estate." Fisher claims that Perron, as a trustee of the Revocable Trust, violated her fiduciary duty to maintain the confidentiality of trust information and her duty of loyalty by disclosing her recordings of calls with her siblings, using that information to pursue litigation for her own benefit, and placing her own interests above those of the trust beneficiaries.

In April 2019, the probate court struck both the call transcript and its contents from the court record and prohibited further use of the transcript. According to Fisher, the court further determined in November 2019 that Perron's allegations against Fisher and the estate entities "were frivolous and warranted sanctions." The probate court "held that [Perron] committed a breach of trust which caused the Revocable Trust to incur substantial and unnecessary attorneys' fees and costs." In May 2020, the probate court held Perron, her lawyer, and the lawyer's firm jointly and severally liable for $19,951.23 in attorney's fees and costs to the estate and $23,500.00 in attorney's fees and costs to the Revocable Trust. In August 2020, the probate court struck Perron's filing of the call transcript in another probate action. Fisher alleges that the probate court has since dismissed all of Perron's petitions filed against him.

In September 2020, Fisher filed this lawsuit in United States District Court, bringing three claims. First, he asserts that Perron violated the Federal Wiretap Act, 18 U.S.C. §§ 2510–23, through her recording of the February 18 call and recordings of other calls among the siblings. Specifically, he alleges that Perron violated 18 U.S.C. § 2511, which prohibits a participant to a call from recording the call "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State" or disclosing or using any such illegally intercepted oral communication. *Id.* § 2511(d). Second, Fisher alleges that the recordings violated Michigan's eavesdropping law, Mich. Comp. Laws § 750.539c, which makes the use of an electronic "device to eavesdrop upon [a] conversation without the consent of all parties thereto" a felony. Finally, Fisher alleges that Perron committed the tort of public disclosure of private facts because she "knew that the substance of the Sibling Calls, including the February 18 Call, was private, personal, and of a nature that should not be shared publicly." He seeks damages under federal and state law, punitive damages, suppression of the contents of any recordings, and other equitable relief.

After full briefing on Perron's motion to dismiss, the district court dismissed the complaint with prejudice. This timely appeal followed.

## II. ANALYSIS

"We apply de novo review to a district court's grant of a motion to dismiss." *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017). We "accept all well-pleaded factual allegations as true," viewing the complaint in the light most favorable to the plaintiff. *Id.* However, the presumption of truth is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678. We consider whether the complaint has "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A. The Michigan Eavesdropping Statute

Fisher asserts that the February 18 call recording, Perron's alleged recordings of various other calls with her siblings, and the disclosure of those recordings violated Michigan's eavesdropping statute. The district court dismissed this claim because the court concluded,

based on relevant Michigan cases and other data, that the Michigan Supreme Court would interpret the statute as a one-party consent law. Perron, as a participant to the calls, was thus legally allowed to make the recordings. Fisher argues that the district court's analysis was flawed and that the plain language of the statute is clear in requiring the consent of all parties for a legal recording.

The threshold question for the claim under Michigan's eavesdropping statute is whether the statute provides for liability of conversation participants who make recordings without the knowledge or permission of other participants. The law states:

> Any person who is present or who is not present during a private conversation and who wilfully [sic] uses any device to eavesdrop upon the conversation without the consent of all parties thereto, or who knowingly aids, employs or procures another person to do the same in violation of this section, is guilty of a felony punishable by imprisonment in a state prison for not more than 2 years or by a fine of not more than $2,000.00, or both.

Mich. Comp. Laws § 750.539c. Michigan law defines "eavesdropping" as "to overhear, record, amplify, or transmit any part of the private discourse of others without the permission of all persons engaged in this discourse." *Id.* § 750.539a. The Michigan Supreme Court has yet to determine whether this statutory language allows for secret participant recordings or requires the consent of all parties to record a call. Thus, the district court and now we must predict how the Michigan Supreme Court would rule based on "all the available data." *Stryker Corp. v. XL Ins. Am.*, 735 F.3d 349, 360 (6th Cir. 2012) (quoting *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001)).

Michigan's lower courts, however, have determined that the statute is a one-party consent law. In the leading case, *Sullivan v. Gray*, the Michigan Court of Appeals concluded that "the statutory language, on its face, unambiguously excludes participant recording from the definition of eavesdropping by limiting the subject conversation to 'the private discourse of others.'" 324 N.W.2d 58, 60 (Mich. Ct. App. 1982) (per curiam). As such, "a potential eavesdropper must be a third party not otherwise involved in the conversation being eavesdropped on." *Id.* The court reasoned that excluding participants from statutory coverage avoids making surplusage of the words "private discourse of others" in the definition of eavesdropping. *Id.*

Fisher argues that we should not follow *Sullivan* based on a 2019 decision from the United States District Court for Eastern District of Michigan, *AFT Michigan v. Project Veritas*, 397 F. Supp. 3d 981 (E.D. Mich. 2019).**[2]** In the 2019 decision, the district court analyzed "all the available data" and concluded that the Michigan Supreme Court would decide that the statute requires the consent of all parties for the recording of conversations. *Id.* at 987, 989 (quoting *Stryker Corp.*, 735 F.3d at 360). The district court reasoned that "*Sullivan*'s construction contravenes the Legislature's intent made clear" in the statutory language that "*[a]ny person who is present*" is potentially liable and that "*all participants*" must consent to a recording. *Id.* at 988–89 (emphasis in original) (quoting *Sullivan*, 324 N.W.2d at 61–62 (Brennan, J., dissenting)).

However, the 2019 *AFT Michigan* decision is of little probative value. The Michigan Supreme Court declined in May 2021 to answer the certified question from the *AFT Michigan* court on the proper interpretation of the eavesdropping statute. *In re Certified Question*, 959 N.W.2d 172 (Mich. 2021) (mem.). Then, in November 2021, the same district court granted a motion for reconsideration and entered an Opinion and Order holding that "the statute is not violated when a conversation is recorded by one of its participants." *AFT Mich. v. Project Veritas*, No. 17-13292, 2021 U.S. Dist. LEXIS 215090, at *2 (E.D. Mich. Nov. 8, 2021).

That leaves *Sullivan* untouched as a viable data point for our analysis. Although a published state appellate court decision does not dictate our determination of how the Michigan Supreme Court would construe the state's eavesdropping statute, it "is a datum for ascertaining state law which is not to be disregarded by a federal court *unless it is convinced by other persuasive data that the highest court of the state would decide otherwise*." *Grantham & Mann, Inc. v. Am. Safety Prods., Inc.*, 831 F.2d 596, 608–09 (6th Cir. 1987) (emphasis in original) (quoting *Comm'r v. Bosch's Est.*, 387 U.S. 456, 465 (1967)). We cannot say that the appellate court's analysis in *Sullivan* was "poorly reasoned," as Fisher argues. The appellate court construed the statute according to Michigan law, which defines "eavesdropping" as based on "the private discourse of others," to determine what behaviors § 750.539a and § 750.539c deem

---

**[2]**Fisher asserts that *AFT Michigan* "overruled" *Sullivan* "for purposes of federal law." This argument misunderstands both how precedent operates within the federal courts and how federal courts are meant to ascertain the proper interpretation of state law.

illegal. *Sullivan*, 324 N.W.2d at 59–60. The court rejected the argument that the statute "must apply to both participants and nonparticipants since it relates to '[a]ny person who is present or who is not present during a private conversation.'" *Id.* at 60 (alteration in original). The *Sullivan* court instead explained that this statutory language acknowledges that eavesdropping may be committed by using a recording device either in close proximity or at distance. *Id.* The *Sullivan* court's conclusion, therefore, is an important data point in favor of a participant exception to the Michigan eavesdropping statute.

Apart from *Sullivan*, we must also consider the numerous cases that have since cited or relied on *Sullivan*'s conclusion that the eavesdropping statute allows for participant recording. Other Michigan Court of Appeals decisions, along with opinions from federal district courts applying Michigan law and this court, have cited *Sullivan* regularly as support for the conclusion that Michigan's eavesdropping statute is inapplicable to participant recordings. *See, e.g.*, *Lewis v. LeGrow*, 670 N.W.2d 675, 683–84 (Mich. Ct. App. 2003); *Courser v. Mich. House of Reps.*, 831 F. App'x 161, 179 (6th Cir. 2020); *People v. Williams*, No. 346689, 2020 WL 2601567, at *3 (Mich. Ct. App. May 21, 2020) (per curiam); *Ferrara v. Detroit Free Press, Inc.*, 52 F. App'x 229, 233 (6th Cir. 2002). Indeed, in the past two years, we have twice cited *Sullivan* to support the proposition that the Michigan eavesdropping statute does not cover participant recordings. *Courser*, 831 F. App'x at 179; *Gamrat v. McBroom*, 822 F. App'x 331, 334 (6th Cir. 2020).

Based on the above data, we agree with the district court that, under the current law in Michigan, a participant does not violate Michigan's eavesdropping statute by recording a conversation without the consent of the other participants. Fisher's complaint alleges that Perron recorded conversations that she herself participated in. Therefore, he has failed to state a claim under Michigan's eavesdropping statute.

In his reply brief, Fisher argues for the first time that even if Michigan is a one-party-consent state, he has still stated a viable claim against Perron because we should construe the complaint as alleging that Marc Thomas, Perron's former attorney, did the recording. We cannot, however, assume facts that were not pleaded. Nothing in the complaint suggests that Thomas was responsible for the recording. *See, e.g.*, *McGrew v. Duncan*, 937 F.3d 664, 668 (6th Cir. 2019) (citing *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 328–29 (6th Cir. 2006)).

The complaint clearly alleges that, by February 2018 or earlier, Perron began secretly recording telephone conversations among herself and her siblings. Thomas is not mentioned as a possible recorder; he is referenced only as having received the alleged recordings from Perron. Fisher's new allegation, not included in his complaint, does not change our conclusion that Fisher has failed to state a claim under Michigan's eavesdropping statute.

**B. Public Disclosure of Private Facts**

Fisher also brings a claim against Perron for the public disclosure of private facts. Under Michigan law, this tort requires a plaintiff to allege: "(1) the disclosure of information (2) that is highly offensive to a reasonable person and (3) that is of no legitimate concern to the public." *Doe v. Henry Ford Health Sys.*, 865 N.W.2d 916, 919 (Mich. Ct. App. 2014) (per curiam) (quoting *Doe v. Mills*, 536 N.W. 2d 824, 828 (Mich. Ct. App. 1995)). The district court dismissed this claim on the ground that the only sufficiently alleged disclosures—the filings of the February 18 call transcript—were entitled to the litigation privilege, which provides an absolute privilege for "testimony or other communications or disclosures made 'in the course of judicial proceedings.'" *Ellis v. Kaye-Kibbey*, 581 F. Supp. 2d 861, 878 (W.D. Mich. 2008) (citing *Maiden v. Rozwood*, 597 N.W.2d 817, 830 (Mich. 1999)). Because we "may affirm [the district court] on any ground supported by the law and the record," *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 571 (6th Cir. 2019) (quoting *Sazerac Brands, LLC v. Peristyle, LLC*, 892 F.3d 853, 859 (6th Cir. 2018)), we look first to whether Fisher's complaint states a claim.

To do so, the complaint must allege a disclosure of private information. *See Henry Ford Health Sys.*, 865 N.W.2d at 919. Fisher's allegations about the February 18 call meet this requirement. He claims that Perron disclosed her recording of the February 18 call to her attorney and later to a court reporter in order to create a transcript for use in litigation. The allegations about other disclosures, however, fall short. Fisher alleges that Perron released recordings of other calls "to the court reporter, and possibly others," but he does not allege when these disclosures occurred, who the "others" might be, or whether those calls contained private information. These conclusory allegations are insufficient to allege a disclosure "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge" as required for this tort. *Id.* at 920.

The next question is whether Fisher's complaint sufficiently alleges that the information disclosed in the February 18 call was "highly offensive to a reasonable person." *Swickard v. Wayne Cnty. Med. Exam'r*, 475 N.W.2d 304, 310 (Mich. 1991) (quoting *Fry v. Ionia Sentinel-Standard*, 300 N.W.2d 687, 689 (Mich. Ct. App. 1980)). Fisher does not allege what personal and sensitive information the transcript contained beyond the bare allegation that the February 18 call "involved private, personal, and sensitive financial, tax, and other information about the participants' own affairs as well as their mother's estate, [Perron's] efforts to extract more than she was entitled to out of their mother's estate, and confidential settlement discussions," and that the disclosure revealed that "he was engaged in a protracted battle with his sibling, [Perron], concerning their mother's estate."

Michigan cases indicate that these conclusory allegations cannot support the inference that a reasonable person would find the disclosed information highly offensive. *See, e.g.*, *Swickard*, 475 N.W.2d at 310. Michigan cases finding allegations of highly offensive disclosures to be adequate have involved matters alleged to be of a sensitive nature, such as medical or sexual information. In *Doe v. Mills*, for example, "plaintiffs allege[d] that defendants publicized the fact of their abortions despite their intent to keep this matter 'private, confidential, and free from any publicity,'" which embarrassed and humiliated them. 536 N.W.2d at 829. The Michigan Court of Appeals concluded these allegations concerned matters that a reasonable person would consider private and would find offensive if disclosed. *Id.* In *Granger v. Klein*, although the United States District Court for the Eastern District of Michigan found no liability under Michigan law for defendants accused of including a small picture of a student's genitals in a school yearbook, the court explained that the printing "may be considered offensive to the reasonable person." 197 F. Supp. 2d 851, 869 (E.D. Mich. 2002). Michigan appellate cases, however, have found that even information usually considered private—such as one's home address or familial relationships—is not necessarily highly offensive if disclosed. *Cf. Nyman v. Thomson Reuters Holdings, Inc.*, 942 N.W.2d 696, 705 (Mich. Ct. App. 2019) (upholding the dismissal of a public disclosure of private facts claim based on the publication of Social Security numbers, particularly because of the failure to allege that the information disclosed was highly offensive); *Duran v. Detroit News, Inc.*, 504 N.W.2d 715, 720 (Mich. Ct. App. 1993) (discussing a claim based on the disclosure of an individual's home address).

The complaint states that the contents of the February 18 call were "private, personal, and sensitive," but contains no facts to support an inference that a reasonable person would find them "highly offensive." Fisher offers only the conclusory allegation that Perron "disclosed to the public information that was highly offensive to [Fisher], would be offensive to any reasonable person, and was of no legitimate concern to the public." Fisher offers no allegations about the impact these disclosures had on him nor any allegations allowing us to opine on how a reasonable person would have interpreted them. This claim falls into the proscribed category of "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Fisher's clearest allegation is that the disclosure included confidential financial and tax information. But this allegation also lacks facts and, in his briefs in this appeal, Fisher points to no cases in which Michigan courts have found the disclosure of tax or financial information sufficient to state a claim, nor has he articulated why such a disclosure would be offensive.

In sum, Fisher's allegations against Perron are insufficient to support a claim of public disclosure of private facts, and the district court was correct in dismissing the claim. We therefore need not address the district court's assessment of the litigation privilege application to this claim.[3]

## C. The Federal Wiretap Act

Fisher's first count, but the last we address here, alleges that Perron violated the Federal Wiretap Act. The Federal Wiretap Act provides that a person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" is criminally liable. 18 U.S.C. § 2511(1)(a). Also covered are those who disclose or use such intercepted communications. *Id.* § 2511(1)(c)–(d). Those who have had their communications intercepted may seek civil damages against violators. *Id.* § 2520(a). The federal statute has an unambiguous one-party-consent standard, stating that

---

[3]We also decline to address Fisher's claim, raised for the first time on appeal, that Perron committed a felony that precludes the application of the litigation privilege to the transcript of the February 18 call because the notary public who transcribed the call violated state law in certifying the document without having independent knowledge of the speakers on the call.

"[i]t shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception." *Id.* § 2511(2)(d). However, it also provides an exception to one-party consent if the participant intends to record the communication "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.*

To state a viable claim under this federal law, Fisher's complaint must allege facts sufficient to support the inference that, at the time Perron recorded the February 18 call and other calls, she did so with the purpose of committing either a criminal or tortious act. The complaint generally alleges that Perron recorded the conversations with the intent to harm Fisher by using the calls' contents in litigation against Fisher. The complaint then bases the federal claim on allegations that, through these recordings, Perron: (1) violated Michigan's eavesdropping statute, Mich. Comp. Laws § 750.539c; (2) committed the Michigan tort of public disclosure of private facts; and (c) breached her fiduciary duties.[4] We take each of these underlying claims in turn.

### 1. Michigan's Eavesdropping Statute

As discussed above, Michigan's eavesdropping statute allows for participant recordings without the consent of other parties to the conversation. Fisher's complaint alleges that Perron participated in the calls that she allegedly recorded, meaning that Fisher has not pleaded an underlying violation of the eavesdropping law that could support a claim under federal law. Fisher's Federal Wiretap Act claim thus fails insofar as it relies on Michigan's eavesdropping statute.

### 2. Public Disclosure of Private Facts

Fisher is also unable to use the tort of the public disclosure of private facts as support for stating a claim under the Federal Wiretap Act. As discussed above, Fisher has not alleged facts adequate to support a claim that Perron disclosed highly offensive information through the filing

---

[4]Fisher also alleges in his complaint that, when Perron recorded the calls and disclosed those recordings, she intended to violate Washington's wiretapping statute, Wash. Rev. Code § 9.73.030 *et seq.* On appeal, he "concedes that the violation of the Washington eavesdropping statute does not amount to a tortious act for purposes of the federal wiretapping statute." Appellant Br. at 5.

of the February 18 call transcript or any disclosure of other recordings. Fisher's Federal Wiretap Act claim thus fails insofar as it relies on that tort.

### 3. Breach of Fiduciary Duty

Fisher alleges that Perron's recording, use, and disclosure of recorded calls with her siblings breached her fiduciary duties, including the duties of loyalty and confidentiality, as a co-trustee of the Anne M. Spivak Revocable Trust. Fisher does not bring a separate count for this alleged breach, but instead exclusively subsumes the allegation under the federal wiretapping claim. At a minimum, a viable claim for the breach of fiduciary duty must include facts alleging: "(1) the existence of a fiduciary duty, (2) a breach of that duty, (3) proximately causing damages." *FCA US LLC v. Bullock*, 446 F. Supp. 3d 201, 214 (E.D. Mich. 2020) (quoting *Delphi Auto. PLC v. Absmeier*, 167 F. Supp. 3d 868, 884 (E.D. Mich. 2016)). As with the other underlying claims, Fisher must also allege that Perron intended to breach this duty when she made and used the recordings in order for it to trigger the Federal Wiretap Act's exception to the one-party consent standard.

Fisher's complaint does not meet the pleading standards of *Iqbal* for this necessary underlying claim. The complaint alleges that Perron, as a trustee of the Revocable Trust, had fiduciary duties of confidentiality and loyalty to the Trust's beneficiaries. However, this breach of fiduciary duty claim is an underlying offense for, and must satisfy the requirements of, the Federal Wiretap Act. It falters because the complaint fails to adequately allege that Perron intended to breach those duties and proximately cause damage to the Revocable Trust's beneficiaries. 18 U.S.C. § 2511(2)(d); *see Clemons v. Waller*, 82 F. App'x 436, 440–41 (6th Cir. 2003); *Bowens v. Aftermath Ent.*, 254 F. Supp. 2d 629, 642 (E.D. Mich. 2003). The complaint alleges no facts to support the conclusion that Perron had such an intent either when making the recording or when making the only alleged disclosure of a recording through the February 18 call transcript filed in the probate court. The complaint provides only the conclusory allegation that Perron "intended to, and subsequently did," breach her fiduciary duties, "including the duties of confidentiality and loyalty" through her recording. Without allegations providing factual support for Perron's intent to breach those duties, Fisher has failed to plead a breach of fiduciary duties as an underlying claim to a violation of the Federal Wiretap Act.

4. Fisher's Remaining Arguments

For the first time on appeal, Fisher asserts that his complaint adequately alleges that Perron intended to disclose tax return information, in violation of 26 U.S.C § 6103(a)(3). Although the complaint refers to the disclosure of "tax information" in the transcript of the February 18 call, there are no separate allegations that Perron recorded the conversation with the intent to disclose tax information, let alone "tax *return* information." Moreover, these are new allegations raised on appeal that Fisher cannot use to amend his complaint through appellate review. *See, e.g.*, *McGrew*, 937 F.3d at 668 (citing *Harvey*, 453 F.3d at 328–29).

Fisher also argues that the district court dismissed his complaint without considering his allegation that Perron recorded other calls between the siblings. According to Fisher, if these other alleged recordings are taken into account, his complaint obviously states a claim. But even fewer facts are alleged with respect to the other phone calls. Fisher asserts that his allegations of recording and disclosure of these other calls are plausible because Perron's purported reason for recording the February 18 call—her desire to inform her attorney what her siblings were saying—applies to the other calls as well. But Fisher provides no factual information, only an allegation that there were other calls beyond the February 18 call and that, "on information and belief," Perron recorded them. Even assuming some other calls and recordings happened, there are no allegations of disclosure or that Perron intended to violate federal or state law or to commit a tortious act through the recordings. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the plaintiff has failed to state a claim. *Iqbal*, 556 U.S. at 679. Fisher's allegations about those other calls and recordings thus fail to show that he is entitled to relief.

## III. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's dismissal of Fisher's complaint.