NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0252n.06

No. 23-1529

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 10, 2024
KELLY L. STEPHENS, Clerk

ERIC S. BRYANT,

    Plaintiff-Appellant,

    v.

ALEJANDRO MAYORKAS, Secretary, United States Department of Homeland Security,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

___

Before: MOORE, McKEAGUE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

A jury concluded that the U.S. Customs and Border Protection Agency neither discriminated against plaintiff Eric Bryant because of his race nor retaliated against him for filing a complaint with the EEOC when it demoted Bryant for sleeping while on duty. Plaintiff appeals, challenging three sets of evidentiary rulings by the district court that he argues constitute reversible error requiring a new trial. We disagree and affirm.

I.

Plaintiff has been a patrol officer with the U.S. Customs and Border Protection Agency (CBP) in southeast Michigan since 2002. In March 2017, Director of Field Operations Christopher Perry promoted Bryant to supervisor, which was subject to an 18-month probationary period. Within four months of his promotion, Bryant's peers twice complained about his sleeping while on duty, prompting a CBP investigation into the matter. Port of Detroit Director Marty Raybon

found the complaints well-founded and recommended to Perry that Bryant be demoted. On review, Perry agreed—he ultimately concluded that on July 20, 2017, Bryant was "inattentive, and possibly asleep," and, on the very next day, Bryant was "sleeping at [his] desk" (which a coworker captured in a photograph). Bryant's conduct caused Perry to lose "confidence in [Bryant's] ability to be an effective supervisor," so he revoked Bryant's promotion.

Bryant, who is African American, asserts in this litigation that his demotion constituted racial discrimination and retaliation for having engaged in protected activity (filing a complaint with the EEOC) in violation of Title VII. Following a five-day trial, a jury disagreed and rendered a verdict in the CBP's favor. Bryant now appeals, challenging adverse evidentiary rulings prohibiting evidence of alleged discriminatory animus by non-decisionmakers, statistical data regarding the CBP's promotions of African Americans, and questions regarding whether witnesses had seen a picture of a Caucasian employee sleeping while on duty.

II.

We review a district court's evidentiary rulings for an abuse of discretion, which occurs when a district court "relies on clearly erroneous findings of fact, improperly applies the law, or employs an erroneous legal standard," *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012) (citation omitted), or when we are "firmly convinced that a mistake has been made, i.e., when we are left with a definite and firm conviction that the trial court committed a clear error of judgment," *United States v. Heavrin*, 330 F.3d 723, 727 (6th Cir. 2003) (citation omitted). Under this standard, the district court receives "[b]road discretion"; "[its] decisions will not be lightly overturned." *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 897 (6th Cir. 2004) (citation omitted).

A.

*Non-Decisionmaker Evidence.* The district court prohibited plaintiff from introducing evidence concerning alleged racial animus of the coworkers who reported Bryant's sleeping. On appeal, Bryant takes issue with two aspects of that ruling. First, he complains that he was not permitted to inquire into whether fellow supervisor Joseph Morin—who took the picture of Bryant sleeping—was "known to have used the N-word." (At his deposition, Morin admitted that he used to use the word "[b]ack in the '90s" when reciting rap lyrics, but he no longer does so.) Second, Bryant contends he should have been able to ask James Williams, one of the supervisors who saw the photo and then reported it up the chain of command, about "discriminatory conduct and complaints that were filed against" him. Because neither Morin nor Williams were involved in the decision-making process regarding plaintiff's demotion, the district court concluded such evidence was irrelevant and thus inadmissible.

Of these two issues, we address only the first on the merits. Bryant did not set forth below, or here, any more specifics concerning Williams. Given this failure, we deem that argument forfeited, *see, e.g.*, *McGrew v. Duncan*, 937 F.3d 664, 669 (6th Cir. 2019), and focus solely on Morin's alleged racial animus.

At best, Bryant complains of "isolated discriminatory remark[s]" (and ones that were not directed to plaintiff or other African-American employees) "made by one with no managerial authority over the challenged personnel decision[]," which is not indicative of discriminatory conduct by an employer. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir. 1998); *see also Smith v. Leggett Wire Co.*, 220 F.3d 752, 759–60 (6th Cir. 2000) ("stray comments" by non-decisionmakers made "long before" an adverse employment action are irrelevant). To be sure, we have sometimes permitted the introduction of racial animus by non-decisionmakers to

show a discriminatory atmosphere, i.e., if such evidence could reflect "racially hostile attitudes in [a] particular office and racial insensitivity among the supervisors within that office." *Robinson v. Runyon*, 149 F.3d 507, 513 (6th Cir. 1998). But Morin's quoting of rap lyrics years before falls well short of crossing the relevancy threshold.

Nor do we find persuasive Bryant's "cat's paw" argument, which he says supports admission of the evidence about Morin and Williams because their reporting of Bryant's sleeping "initiated" defendant's investigation. *See, e.g.*, *Bledsoe v. Tenn. Valley Auth. Bd. of Dirs*., 42 F.4th 568, 582–84 (6th Cir. 2022). Under the cat's paw theory of liability, an employer can be liable when a biased non-decisionmaker influences a decisionmaker's action by being "the driving force" behind the employment action. *Id.* at 582. Even if we agree with Bryant that Morin and Williams reporting the photo "initiated" the investigation, that is of no moment because there is no evidence that either person investigated Bryant's misconduct or determined what level of discipline (if any) was appropriate.

In sum, the district court did not abuse its discretion when it concluded the evidence of alleged animus by Morin and Williams was not admissible.

B.

*Statistical Evidence*. During discovery, plaintiff obtained the CBP's promotional data from 2013 to 2021. It reflects that from 2013 to 2015 (under the supervision of Raybon and Perry), the CBP selected twenty-eight employees for promotion, one of whom was African American. As for 2016 to 2021, three African Americans (including Bryant) were among the twenty-three employees who were promoted.

The government moved in limine to exclude that evidence, contending that the data reflecting promotions was irrelevant to Bryant's demotion claim, that the data otherwise lacked

foundational context given the lack of "surrounding facts and circumstances" concerning the applicant pool, and that it did not show a "significant disparity" to infer discrimination in light of the data being apparently proportional to the overall employee population. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 340 (1977); *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1466 (6th Cir. 1990). The district court agreed that the data lacked "adequate foundation to make this evidence relevant" and granted the motion. But it explained that it "might reconsider" at trial if plaintiff made "an offer of proof to sustain" a "better foundation."

Bryant made no such offer at trial. His counsel did, however, elicit testimony from Raybon and Perry concerning the CBP's promotions of African Americans: Raybon testified that "[q]uite a few" had been promoted to supervisor, and Perry testified that he had "no idea as to [his] track record in terms of hiring African Americans" before explaining that he had promoted "dozens" of African Americans to "managers and above." But, consistent with its pretrial ruling, the district court prohibited Bryant from asking further questions "relative to promoting African Americans." And again, at no point did his counsel inquire about the applicant pool for those promotions to give some context to the statistical data.

On appeal, plaintiff asserts that the district court's restrictions reflect an abuse of discretion because, in his words, "[t]he statistical evidence demonstrated that defendant had a disposition to discriminate against CBP's African American employees in its promotional practices." But the value of statistical evidence "depends on all of the surrounding facts and circumstances." *Int'l Bhd. of Teamsters*, 431 U.S. at 340. Moreover, "for statistics to be valid and helpful in a discrimination case, both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006) (brackets and citation omitted). Put differently, a plaintiff must "place his

figures in a relevant context so as to make them meaningful." *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 943 (6th Cir. 1987).

Bryant made no such showing in district court. *See Smith*, 220 F.3d at 761–62 (district court erred in admitting hiring statistics unaccompanied by applicant pool data). Nor does he rebut our caselaw providing that statistics reflecting the race of supervisors are "not relevant to the issue of whether [an employer] terminated [an employee] because of his race." *Id.* at 762. Instead, he contends the district court restricted him from asking questions that would have allowed him to discern foundation supporting his introduction of statistics. But our review of the record reflects that the district court's restrictions were consistent with its pretrial ruling, which left the door open for Bryant to make an offer of proof about applicant pool data.

For these reasons, we find no abuse of discretion concerning the district court's restriction on the use of statistical data.

## C.

*Photographic Evidence*. Before trial, the district court ruled that Bryant could not offer as evidence a picture of another coworker sleeping. Although it found admissible the facts surrounding Justin Thamarus sleeping on the job, it ruled that the picture of him purportedly doing so was inadmissible for lack of foundation, reasoning: "There is no indication who took it, when it was taken, [and t]he background's been blotted out . . . so you can't really see where he is when he's asleep." Bryant does not challenge this ruling on appeal. Instead, he argues that although the district court allowed his counsel to elicit testimony at trial concerning Thamarus sleeping, it erred when it prohibited him from asking witnesses whether they had seen the picture of Thamarus sleeping.

Bryant contends that restriction was error, asserting in a conclusory fashion that testimony about the picture would "show that white employees like Mr. Thamarus were treated differently than African American employees like Mr. Bryant." We cannot agree. Having excluded the photograph for lack of foundation, the district court did not abuse its discretion in keeping out derivative evidence (testimony about the photograph), *see* Fed. R. Evid. 103(d), while nonetheless permitting plaintiff to question witnesses about the CBP's ultimate disciplinary treatment (or lack thereof) of Thamarus as it compared to Bryant's situation.

III.

For these reasons, we affirm the district court's judgment.