NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0228n.06

Case No. 13-3503

FILED
Mar 25, 2015
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**


| | | |
|---|---|---|
| MICHAEL STISO, for himself and all others similarly situated, | ) ) ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| INTERNATIONAL STEEL GROUP, d/b/a ARCELORMITTAL USA, LLC; ARCELORMITTAL USA LLC; INTERNATIONAL STEEL GROUP INC. LONG TERM DISABILITY INSURANCE PLAN; METROPOLITAN LIFE INSURANCE COMPANY, | ) ) ) ) ) | |
| Defendants-Appellees. | | |

_____/


**Before: MERRITT, BOGGS, and STRANCH, Circuit Judges.**

**MERRITT, Circuit Judge.** Plaintiff Michael Stiso, an employee of defendant International Steel Group and a beneficiary under its long-term disability insurance plan, brought this action to enforce a 7% per year cost-of-living increase to his long-term disability benefits. He sought the increase in benefits based on language from the long-term disability plan and from the summary plan description. The language in both the disability plan and in the summary of

the disability plan distributed to employees refers to a 7% increase in predisability earnings. The

plan, drafted by defendant Metropolitan Life Insurance Company, reads as follows:

> *Indexed* predisability earnings means *your predisability earnings increased by 7%.* The first increase will take place on the date the 13th Monthly Benefit is payable. Subsequent increases will take effect on each anniversary of the first increase. You must have been continually receiving Monthly Benefits under This Plan.

Plan at 14 (emphasis added). The summary of the plan, distributed to plaintiff by his employer,

International Steel, uses similar language regarding "indexed" earnings with a 7% annual

increase:

> The predisability earnings on which your LTD [long-term disability] replacement income is based are *indexed*—that is, *increased annually* by a percentage. After you have received LTD benefits of [sic] 12 months, *your predisability earnings are increased by 7%.* If you continue receiving LTD benefits, your predisability earnings for purposes of the plan are *increased 7% annually* on the anniversary of your previous increase.

Summary Plan Description at LTD 6-7 (emphasis added).

Plaintiff seeks relief under two sections of the Employment Retirement Income Security

Act: wrongful denial of benefits under the terms of the insurance plan in violation of Section

502(a)(1)(B), 29 U.S.C.§ 1132(a)(1)(B),[1] and equitable claims of estoppel and breach of

---

[1] Section 502 (a)(1)(B) says:

> (a) Persons empowered to bring a civil action
>
> A civil action may be brought--
>
> **(1)** by a participant or beneficiary--
>
> . . .
>
> **(B)** to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . .

29 U.S.C. § 1132(a)(1)(B).

fiduciary duty under Section 502(a)(3), 29 U.S.C. § 1132(a)(3). By providing plaintiff with a summary plan description that led plaintiff reasonably to understand that he would receive a 7% yearly increase in benefits and then denying his claim despite the explicit language in the summary plan description, both International Steel and defendant Metropolitan Life Insurance Company breached their fiduciary responsibilities to plaintiff. We therefore reverse the district court's judgment and remand with instructions to grant an increase in benefits to plaintiff.

## I.

The facts are undisputed. Defendant International Steel Group, doing business as ArcelorMittal USA, LLC, provides its employees with long-term disability benefits if certain eligibility conditions are met. Defendant Metropolitan Life Insurance Company administers the long-term disability benefits program as agent for International Steel and is the party responsible both for deciding eligibility and paying benefits. The benefit plan is governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.*, and it is an employer-funded welfare benefit plan within the meaning of ERISA. *Id.* § 1002(a)(1). Employees generally do not receive the actual plan document unless they request it. Instead, employees receive a summary of the plan that outlines the benefits provided by the plan as required by ERISA. *Id.* §§ 1022(a), 1024(B).

Plaintiff became employed with International Steel in May 2003. He became a participant in the company's long-term disability plan. Plaintiff received the summary plan description from International Steel in January 2005. Thereafter, plaintiff had a stroke and became disabled and unable to work. He received a copy of the actual plan document after he became disabled. There is no dispute about his eligibility to receive long-term disability benefits, and he has been receiving benefits since March 2006. In February 2009, plaintiff

requested an increase in his monthly benefits based on the language in the plan and the summary providing for a 7% annual increase. MetLife denied the claim and plaintiff filed this action in federal court against his employer ArcelorMittal, the name used by International Steel after a merger with Mittal Steel Company and Arcelor Steel Company, and against MetLife, the claims administrator.

Plaintiff brought claims against defendants for failure to pay the full benefits due under the plan in violation of 29 U.S.C. § 1132(a)(1)(B) (Count I), a claim for conflict of interest for wrongful failure to pay the full benefits due under the plan in violation of 29 U.S.C. § 1132(a)(1)(B) (Count II), a claim for estoppel pursuant to 29 U.S.C. § 1132(a)(3)(B) (Count III), and a claim for breach of fiduciary duty in violation of 29 U.S.C. § 1132(a)(3)(B) (Count IV).[2] The district court granted summary judgment to defendants, concluding that the terms of the insurance plan did not provide for the 7% annual increase sought by plaintiff and that equitable relief was not warranted. *Stiso v. Int'l Steel Group*, No. 5:11CV2592, 2013 WL 1338200 (N.D. Ohio Mar. 29, 2013).

**II.**

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983). ERISA sets forth fiduciary and statutory duties that the employer, and the insurer if so designated by the employer, must follow. The ERISA plan itself is usually not provided to the participant absent request. Instead, ERISA requires that a summary of plan benefits be provided to employees and that the summary "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably

---

[2] Plaintiff brought his action on behalf of himself and all other persons similarly situated. We make no ruling on the merits of class certification and leave that to the district court to sort out on remand.

apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). It is intended to be an easy reference for employees and should enable participants to understand their coverage and, in so doing, create an obligation on participants to inform themselves about the terms of coverage.

In constructing ERISA's statutory scheme, Congress ensured that employers and third-party administrators who manage welfare benefit plans for employees and beneficiaries act with high fiduciary duty. See *Dudenhoefer v. Fifth Third Bancorp*, 692 F.3d 410, 417 (6th Cir. 2012), *vacated and remanded on other grounds*, 134 S. Ct. 2459 (2014); *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999) ("ERISA imposes high standards of fiduciary duty upon administrators of an ERISA plan."). A person or entity qualifies as a fiduciary

> with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A); *see also Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) ("[O]ne is a fiduciary to the extent he exercises *any* discretionary authority or control.") (emphasis in original).

ERISA also provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). We have set out three broad duties of ERISA fiduciaries: (1) the duty of loyalty, which requires "all decisions regarding an ERISA plan . . . be made with an eye single to the interests of the participants and beneficiaries;" (2) the "prudent person fiduciary obligation," which requires a plan fiduciary to act with the "care, skill, prudence, and diligence of a prudent person acting under similar circumstances," and (3) the exclusive benefit rule, which requires a fiduciary to "act for the

exclusive purpose of providing benefits to plan participants." *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 448–49 (6th Cir. 2002) (internal quotation marks omitted); *accord Dudenhoefer*, 692 F.3d at 417. Each of these duties serves the goal of ensuring that ERISA fiduciaries act "solely in the interest of [plan] participants and beneficiaries." 29 U.S.C. § 1104(a)(1).

ERISA's fiduciary standards are derived from the common law of trusts "bearing in mind the special nature and purpose of employee benefit plans." *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996) (quoting H.R. Conf. Rep. No. 93–1280, at 302); *James*, 305 F.3d at 449. Because of its origins in the common law of trusts, Congress made provision for equitable relief for violations of the ERISA statutes. Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), allows a plan beneficiary to bring a civil action "to enjoin any act or practice" that violates the ERISA statutes, or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions" of the ERISA statutes.[3] Section 502(a)(3) is "broad enough to cover individual relief for breach of a fiduciary obligation." *Varity Corp. v. Howe*, 516 U.S. 489, 510 (1996).[4] In contrast to a denial-of-benefits claim under 29 U.S.C. § 1132(a)(1), equitable claims under Section 1132(a)(3) may rest upon statutory obligations in the context of "fiduciary responsibility." Therefore, equitable claims, such as breach of fiduciary duty, are addressed in the first instance in the district court under a normal standard of review, not the highly deferential standard of "arbitrary and capricious" review. *Moore v. Lafayette Life Ins. Co.*, 458

---

[3] A plaintiff may bring an equitable claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) alongside a claim for benefits under 29 U.S.C. § 1132(a)(1)(B). *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 839 (6th Cir. 2007); *Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 718 (6th Cir. 2005).

[4] "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate . . . ." 29 U.S.C. § 1109(a).

F.3d 416, 427 (6th Cir. 2006). We will therefore address plaintiff's breach-of-fiduciary-duty claim using the *de novo* standard of review.

## A. **International Steel**

Plaintiff claims that International Steel breached its fiduciary duty by promising clear benefits that were then renounced. The summary plan description must "be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise . . . participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a). As it was required to do under ERISA, International Steel prepared and distributed a summary plan description to plan participants, including plaintiff. International Steel, as the author and distributor of the summary plan description to plan participants, functions as a fiduciary. 29 U.S.C. § 1002(21)(A) (entity qualifies as a fiduciary to the extent it "has any discretionary authority or discretionary responsibility in the administration of such plan"). The summary plan description is therefore a fiduciary communication to plan participants and selecting the information to convey through it is a fiduciary activity. *See Dudenhoefer*, 692 F.3d at 423.

However, in *Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011), the Supreme Court held that the terms of a summary plan description cannot be enforced as substitutes for the terms of the plan itself. The Court concluded that the summary documents, including summary plan descriptions, provide communication with participants and beneficiaries about the plan, but the statements themselves do not constitute terms of the plan for purposes of claims under Section 1132(a)(1)(B). But the Court did not find that this holding left ERISA participants and beneficiaries who were given only a summary plan description without a remedy. ERISA requires the plan administrator "to write and to distribute written notices that are 'sufficiently

accurate and comprehensive to reasonably apprise' plan participants and beneficiaries of 'their rights and obligations under the plan.'" *Amara*, 131 S. Ct. at 1881 (quoting 29 U.S.C. §§1102(a), 1104(b)). The Court concluded that "it is not difficult to imagine how the failure to provide proper summary information, in violation of the statute, injured employees . . . . We doubt that Congress would have wanted to bar those employees from relief." *Id.*

It is clear that an explanation of plan benefits is subject to ERISA's fiduciary standards and beneficiaries may seek equitable relief if those standards are not met. *Moore*, 458 F.3d at 432 (recognizing an equitable claim under § 1132(a)(3) where ERISA fiduciary misled plan participant or beneficiary); *James*, 305 F.3d at 453. Plaintiff's claim is that International Steel breached its fiduciary duties in providing plaintiff with a summary plan description "that purported to provide a benefit that [International Steel] never intended to provide." Plaintiff's Br. at 26. As a plan fiduciary and the drafter and distributor of the summary plan description, International Steel had a duty to communicate fully and accurately with plan participants and beneficiaries about the provisions of the plan. By furnishing plaintiff with a summary plan description that was misleading as to the benefits it intended to provide, regardless of whether the statements were made intentionally or negligently, the fiduciary duty owed plaintiff was breached. *James*, 305 F.3d at 449. To reiterate, the language in the summary plan description says:

> The predisability earnings on which your LTD [long-term disability] replacement income is based are *indexed*—that is, *increased annually* by a percentage. After you have received LTD benefits of [sic] 12 months, *your predisability earnings are increased by 7%*. If you continue receiving LTD benefits, your predisability earnings for purposes of the plan are *increased 7% annually* on the anniversary of your previous increase.

Summary Plan Description at LTD 6-7 (emphasis added). The language refers only to an increase in benefits after continually receiving benefits for a certain amount of time. Plaintiff

reasonably assumed that the adjustment to predisability earnings, indexed or otherwise, by 7% annually necessarily increases his monthly benefit by the same amount.  There is no limiting or qualifying language, nor does the language refer to other sections of the summary regarding "work incentive" or "working while disabled" on which International Steel relies to rationalize its refusal to pay the 7% annual increase.  The language used would obviously lead a beneficiary like plaintiff reasonably to expect that he would receive a 7% cost-of-living increase if he was unable to return to work due to his disability.  Therefore, International Steel breached its fiduciary duty by issuing a summary plan description that did not accurately reflect the terms of the plan.

## B. <u>MetLife</u>

MetLife also owes a fiduciary duty to plaintiff because it exercises control over the denial or payment of benefits under the plan.  When an insurance company administers claims for an employee welfare benefit plan and has authority to grant or deny the claims, the company is an ERISA "fiduciary" under 29 U.S.C. § 1002(21)(A).  The fiduciary duties outlined in 29 U.S.C. § 1104(a)(1)(A) include the duty to exercise fiduciary functions for the exclusive purpose of "providing benefits to participants and their beneficiaries."  In this case, MetLife had authority regarding whether to deny or pay claims; therefore, it owed plaintiff a fiduciary duty.  *Libbey-Owens-Ford Co. v. Blue Cross and Blue Shield Mut. of Ohio*, 982 F.2d 1031, 1035 (6th Cir. 1993).  MetLife does not dispute that it exercised its authority in its position as claims administrator in which it administers the plan, interprets plan documents, and pays out benefits.  In its July 7, 2009, letter to Piper Stiso, plaintiff's wife, it states that it "has the discretionary authority to make benefits eligibility determinations and interpret the terms of the Plan," and then refused to grant plaintiff an increase in benefits.

Having concluded that MetLife is an ERISA fiduciary, we must consider whether its interpretation of plan documents, and its denial of benefits based on those documents, was a breach of the fiduciary duty it owed plaintiff under ERISA. Plaintiff's claim against MetLife is premised on its "interpret[ation] of the Plan in a manner which benefited itself rather than the plan beneficiaries" and "in a manner to serve its own financial interests and knowingly contrary to the promises of the [summary plan description]." Plaintiff's Br. at 26. At least two sections of ERISA support plaintiff's claim. *See* 29 U.S.C. § 1104(a)(1) ("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries."); *id.* § 1106(b)(1) ("A fiduciary with respect to a plan shall not . . . deal with the assets of the plan in his own interest or for his own account."). Viewing MetLife's conduct, as we must, in accordance with the common law of trusts, it is to act for the sole purpose of providing benefits to plan beneficiaries like plaintiff. *Dudenhoefer*, 692 F.3d at 417. Its self-serving interpretation of the language in the summary plan description to deny benefits to plaintiff was a breach of its fiduciary duty.

On remand, plaintiff may seek the appropriate equitable remedy, including make-whole relief in the form of money damages. The Supreme Court in *Amara* held that the relevant substantive provisions of ERISA do not set forth any particular standard for determining harm:

> Nor did equity courts insist upon a showing of detrimental reliance in cases where they ordered "surcharge." Rather, they simply ordered a trust or beneficiary made whole following a trustee's breach of trust. In such instances equity courts would "mold the relief to protect the rights of the beneficiary according to the situation involved." [G. Bogert & G. Bogert, Trusts and Trustees § 861, at 4 (rev. 2d ed. 1995).] This flexible approach belies a strict requirement of "detrimental reliance."
>
> . . . [A]ctual harm may sometimes consist of detrimental reliance, but it might also come from the loss of a right protected by ERISA or its trust-law antecedents.

*Amara*, 131 S. Ct. at 1881.

For the foregoing reasons, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion, including providing for the calculation of damages and deciding the class action issues.