RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 23a0164p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

ERIC L. PATTERSON,

               *Plaintiff-Appellant*,

    *v.*

UNITED HEALTHCARE INSURANCE COMPANY;
UNITEDHEALTH GROUP, INC.; UNITED HEALTHCARE
SERVICES, INC.; OPTUM, INC.; SWAGELOK COMPANY;
KREINER & PETERS CO., L.P.A.; SHAUN D. BYROADS;
DARAN PAUL KIEFER,

               *Defendants-Appellees*.

No. 22-3167

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:21-cv-00470—J. Philip Calabrese, District Judge.

Argued:  October 27, 2022

Decided and Filed:  August 1, 2023

Before:  SILER, NALBANDIAN, and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Patrick J. Perotti, DWORKEN & BERNSTEIN CO., L.P.A., Painesville, Ohio, for Appellant.  Wesley E. Stockard, LITTLER MENDELSON, P.C., Atlanta, Georgia, for Appellees.  **ON BRIEF:**  Patrick J. Perotti, DWORKEN & BERNSTEIN CO., L.P.A., Painesville, Ohio, Benjamin P. Pfouts, KISLING, NESTICO & REDICK, Fairlawn, Ohio, for Appellant.  Wesley E. Stockard, LITTLER MENDELSON, P.C., Atlanta, Georgia, Noah G. Lipschultz, LITTLER MENDELSON, P.C., Minneapolis, Minnesota, James P. Smith, LITTLER MENDELSON, P.C., Cleveland, Ohio, Daran Kiefer, KREINER & PETERS CO., LPA, Cleveland, Ohio, for Appellees.

———————————

**OPINION**

———————————

CHAD A. READLER, Circuit Judge.   Eric Patterson was injured in an auto accident. Patterson's medical expenses were paid by his insurer, United.  He also recovered for his injuries from the other driver.  United claimed that Patterson's insurance plan obliged him to pay those monies to United.  Eventually, the parties settled the matter, with Patterson agreeing to pay the plan $25,000.  Patterson later obtained a copy of the plan document, which contained no provision for reimbursement rights.  So he filed suit against United and related entities under the Employee Retirement Income Security Act of 1974 (ERISA).  The district court dismissed some of Patterson's claims due to a lack of standing and the others because they failed to state a claim. We reverse in part and affirm in part.

I.

The following facts are taken from Patterson's complaint.  United, an umbrella term for several affiliated companies, provided medical insurance to Patterson and his wife through Patterson's employer, Swagelok Company.   The plan in which the Pattersons enrolled was subject to ERISA.  *See* 29 U.S.C. §§ 1101, 1103(a).  Upon signing up, Patterson received from United a summary plan description, an ERISA-mandated synopsis of important plan terms.  *See id.* § 1022(a).  Yet he was not given a plan document, a companion instrument that typically contains all of a plan's governing language.  *See CIGNA Corp. v. Amara*, 563 U.S. 421, 437 (2011).  *But see Bd. of Trs. v. Moore*, 800 F.3d 214, 220 (6th Cir. 2015) (a single instrument may constitute both plan document and summary plan description).

The summary plan description said that if a beneficiary recovered from a third party for an insured incident, the plan had a right to reimbursement.  That language became noteworthy when Patterson was injured in a traffic accident with a tractor trailer.   United covered his accident-related medical expenses, as it was obligated to do under the plan.  United's agent and subsidiary, Optum, notified Patterson it would invoke the plan's reimbursement right if he recovered from the other driver.  Patterson later sued the other driver's employer in state court

for his injuries. In the same suit, Patterson joined the plan to obtain a declaratory judgment that the plan had no reimbursement right. During discovery, lawyers hired by United to represent the plan claimed that no plan document existed. Patterson recovered monies from the other driver's employer. When he did, he settled with the plan, agreeing to pay Optum $25,000, which he alleged was to be deposited into the plan's accounts.

Ordinarily, that would have been the end of the story. But when misfortune struck again only months later, a new chapter was added. Patterson's wife suffered injuries in a second traffic accident. The process repeated: United paid for her medical care, Optum notified the Pattersons it would seek some or all of any recovery from the other driver, and Patterson's wife sued the driver and sought a declaratory judgment in state court that United had no reimbursement right. But history did not repeat itself in all respects. After initially denying the existence of a plan document, as they did in the first state court case, the plan's attorneys produced one. The tendered plan document stated that it took precedence over the summary plan document in the event of a discrepancy between the two. And while the summary plan document included a reimbursement right, the plan document did not. On that basis, the state court entered summary judgment in Patterson's wife's favor on her declaratory judgment claim against the plan.

Patterson sued United, Optum, Swagelok, and the plan's attorneys—but not the plan itself. The complaint alleged that defendants violated various ERISA duties owed to Patterson, entitling Patterson to the return of his $25,000. Extrapolating from his and his wife's experiences, Patterson also asserted the existence of a larger scheme to swindle beneficiaries out of their third-party recoveries. To end that practice and remedy its effects, Patterson asked for injunctive and monetary relief on the plan's and other beneficiaries' behalf.

Defendants moved to dismiss Patterson's complaint. While the motion to dismiss was under advisement, Patterson moved for leave to amend his complaint. The proposed amended complaint would have sought class status, narrowed the factual allegations and group of named defendants, and dropped several claims.

The district court dismissed the complaint. To its mind, Patterson had standing to sue only for his $25,000 payment to Optum, not for the injuries purportedly inflicted upon other

insureds or for other forms of relief.  And as to his claim seeking $25,000, the district court concluded, Patterson did not state a viable claim under any of ERISA's causes of action.  The court also denied on futility grounds Patterson's motion for leave to amend.  This appeal followed.

II.

We review de novo the complaint's dismissal.  *Operating Eng'rs' Loc. 324 Fringe Benefit Funds v. Rieth-Riley Constr. Co.*, 43 F.4th 617, 621 (6th Cir. 2022).  For jurisdictional and merits purposes alike, Patterson's well-pleaded factual allegations (and reasonable inferences from those allegations) are taken as true, and we ask whether those allegations move his claims across the line from possible to plausible to survive dismissal.  *Forman v. TriHealth, Inc.*, 40 F.4th 443, 448 (6th Cir. 2022) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*, 13 F.4th 531, 543–44 (6th Cir. 2021).  We start with two jurisdictional issues raised by defendants: standing and *Rooker-Feldman* abstention.  *See Miller v. Bruenger*, 949 F.3d 986, 990 (6th Cir. 2020).

A.1.  First up is the threshold standing question.  Like every other plaintiff in federal court, Patterson must establish standing to bring his claims.  *Glennborough Homeowners Ass'n v. USPS*, 21 F.4th 410, 413–14 (6th Cir. 2021).  That means Patterson must make out an injury-in-fact traceable to defendants' conduct that will likely be redressed by the requested relief.  *Id.* at 414; *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020).  An injury-in-fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).  Because standing is "not dispensed in gross," Patterson must establish his standing as to each claim and each type of relief sought.  *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)).

Our standing analysis centers on Patterson's purported loss of $25,000.  Monetary loss is a concrete injury.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021).  Defendants' behavior allegedly caused Patterson to lose those funds.  And an award of $25,000 would redress his injury.  The district court thus correctly found that Patterson has standing to sue for return of

his $25,000 settlement payment. But his personal interest in this suit ends with that sum. Patterson has not alleged a plausible future injury entitling him to prospective injunctive relief. *See Werner v. Primax Recoveries, Inc.*, 365 F. App'x 664, 668 (6th Cir. 2010). For starters, the complaint does not clearly state whether Patterson remains a beneficiary of the plan. *See id.* Even if he is, he has not plausibly alleged that his experience—an accident, a recovery from the other driver, and a request by United for reimbursement—is certainly impending. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Likewise deficient are the other injuries adverted to in the complaint, allegedly consisting of third-party awards or settlements wrongfully taken from other plan beneficiaries and wasted or mismanaged plan assets. Two apparent problems arise with respect to those injuries. First, it is not entirely clear that Patterson would have standing to raise them on behalf of the plan or other beneficiaries. *See Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013) ("[I]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991))); *Duncan v. Muzyn*, 885 F.3d 422, 428 (6th Cir. 2018); *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 583 (6th Cir. 2016) ("[T]he mere fact that a plaintiff pays funds into a non-compliant plan, if an injury at all, is 'neither concrete nor particularized.'" (quoting *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608 (6th Cir. 2007))).

Second, even if Patterson were the proper party to vindicate these other harms, they are sketched so faintly in the complaint that he fails to establish an injury for standing purposes at all. Start with the ostensible losses suffered by Patterson's fellow plan beneficiaries. Extrapolating from only his experiences, Patterson asserts that "numerous" other enrollees fell victim to a large-scale "scheme," losing "what is likely to be millions of dollars" in unnecessary reimbursements. Possibly. But not plausibly. Patterson's counsel conceded at oral argument his complaint's essential infirmity in this regard: he cannot point to any other insured with a similar history of third-party recovery and allegedly improper reimbursement. So he has not stated any facts at all, let alone "enough facts," to show a plausible injury to other policyholders. *See Forman*, 40 F.4th at 448 (citation omitted); *Ass'n of Am. Physicians & Surgeons*, 13 F.4th at

543–44 (evaluating plausibility of a standing injury under the same standard as a Rule 12(b)(6) motion to dismiss).

Nor can we accept as plausible Patterson's claim that defendants' actions caused harm to the plan itself, an injury he seeks to remedy under 29 U.S.C. § 1132(a)(2). True, that provision generally allows a plaintiff to remedy plan harm. *See infra* at 14–15. But here, Patterson's allegations of plan harm are insufficient. According to the complaint, United, Optum, and the attorneys were paid from plan assets "at the expense of [Patterson] and other Swagelok Plan beneficiaries," suggesting that defendants' frivolous pursuit of reimbursement depleted the plan's assets. Just like the claimed injury to other insureds, though, these claims lack necessary "factual meat" on their bones. *See Davis v. Hartford Life & Accident Ins. Co.*, 980 F.3d 541, 550 (6th Cir. 2020); *see also Clapper*, 568 U.S. at 401 (rejecting speculative allegations of injury). Perhaps the costs defendants incurred when seeking reimbursement are assessed against plan assets on a direct basis. But it may also be that defendants pursued those claims through fixed fees. Patterson's conclusory statements, in other words, raise at most a "conceivable" claim of plan injury. *See Forman*, 40 F.4th at 448 (quoting *Twombly*, 550 U.S. at 570).

Equally hypothetical are Patterson's claims of harm to the plan in the form of inadequate funding. By way of background, ERISA mandates certain "minimum funding standards" to ensure the financial wellbeing of employee benefit plans. *See* 29 U.S.C. §§ 1085 & 1085a. An employer must notify plan beneficiaries if it fails to meet those standards. *Id*. § 1021(d)(1). During the state court litigation between Patterson and Optum, Patterson alleged that Optum represented to him that pursuing reimbursement was "necessary for the financial stability of the Swagelok Plan." From this statement Patterson deduces that United operated the plan in a manner inconsistent with ERISA's minimum funding standards and that Swagelok violated its duty to disclose as much. Optum's statement, however, provides nowhere near enough factual support to conclude that defendants were mismanaging the plan's assets. *See Forman*, 40 F.4th at 448. In short, Patterson's only plausibly alleged injury is the $25,000 he lost when he made a settlement payment to Optum. It follows that he has standing only to seek recovery of that amount.

2. The second arrow in defendants' jurisdictional quiver is the *Rooker-Feldman* doctrine. Honoring principles of state/federal comity, the doctrine bars a state-court loser from circumventing 28 U.S.C. § 1257, which limits appeals of state court decisions to one venue—the United States Supreme Court. *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020). Employing *Rooker-Feldman*, defendants frame this suit as an impermissible attempt to end-run the unsuccessful declaratory judgment claim Patterson brought against United and the plan in state court. We disagree. *Rooker-Feldman*, it bears emphasizing, applies in a "narrow set of cases": those in which state-court losers seek reversal of a state court judgment in a lower federal court. *Id.* at 400, 402. Here, Patterson asks not that we reopen the state court proceeding but instead that defendants' actions before and during that litigation breached duties owed to him. Accordingly, this case falls comfortably outside *Rooker-Feldman*'s purview.

Defendants cite a number of cases concerning the res judicata effects of a settlement like the one Patterson concluded with the plan. Res judicata, however, is not jurisdictional. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (explaining that *Rooker-Feldman*, a jurisdictional bar, is not a substitute for preclusion law). Similarly distinguishable are defendants' cases invoking *Rooker-Feldman*. In each, the plaintiff attempted to undo a state court settlement by arguing his attorney committed malpractice (that is, he is entitled to a sweeter deal than he got). *See, e.g.*, *Delfrate v. Shanner*, 229 F.3d 1151 (6th Cir. 2000) (unpublished table decision); *Anderson v. Chesley*, Nos. 2:10-116-DCR, 2:10-117-DCR, 2011 WL 3319890, at *3–5 (E.D. Ky. Aug. 1, 2011). Patterson, on the other hand, does not attack the settlement itself. He instead argues that defendants, through various misrepresentations and actions in the underlying litigation, breached their ERISA duties owed to him, claims that could not have been pursued in state court. 29 U.S.C. § 1132(e)(1).

B. That takes us to the merits. The complaint invoked two of ERISA's "six carefully integrated civil enforcement provisions." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985). The complaint also listed a third cause of action, which we do not consider because Patterson has waived reliance on it on appeal. *See* Appellant Br. at 17 (disavowing 29 U.S.C. § 1132(a)(1)(B)). Those two remedial provisions open the door to distinct categories of relief for differing types of harm. *See* 29 U.S.C. § 1132(a)(2), (3). What harm does Patterson allege? He

avers that defendants breached two substantive duties, a fiduciary duty and a duty not to engage in certain transactions. *See id.* §§ 1104, 1106. In Patterson's telling, defendants breached both duties when they claimed reimbursement rights where none existed. And, he adds, he can recover for these breaches under either remedial provision. We turn to those causes of action now.

1. Begin with ERISA's cause of action for equitable relief. *See id.* § 1132(a)(3). That provision authorizes a plan beneficiary like Patterson to sue to "(A) to enjoin any act or practice which violates [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this [subchapter] or the terms of the plan[.]" *See Varity Corp. v. Howe*, 516 U.S. 489, 507 (1996) (holding § 1132(a)(3) an appropriate vehicle to remedy individual harms). Patterson invokes subparagraph (B) as a basis for recovering the $25,000 he paid to Optum, requiring us to ask whether such an award amounts to "appropriate equitable relief."

For that to be the case, (1) the basis for Patterson's claim and (2) the nature of the underlying remedy sought must each be equitable in nature. *Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. 356, 363 (2006). The era of the "divided bench," a point in time before the courts of law and equity merged into one, supplies the frame of reference for conducting each inquiry. *Montanile v. Bd. of Trs. of Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016). We ask whether a plaintiff "typically" would have been able to obtain in a pre-merger equity action the remedy he seeks under ERISA, recognizing that equity courts often granted relief outside the bounds of "equitable" relief as defined by the statute. *Id.* (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)).

(a). Patterson asserts claims under ERISA's equitable cause of action, both for breach of fiduciary duty and for engagement in prohibited transactions. That means our interrogation of the "basis" for his claim is a two-headed one. The breach of fiduciary duty claim, to begin, has an equitable basis. Before the law/equity merger, "the courts of equity had exclusive jurisdiction over virtually all" breach of trust actions, *Mertens*, 508 U.S. at 256, the forefather of the ERISA breach of fiduciary duty claim. *See Chaffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 567 (1990) (citing Joseph Story, 2 Commentaries on Equity Jurisprudence § 960 (13th

ed. 1886)); *see also Stiso v. Int'l Steel Grp.*, 604 F. App'x 494, 498 (6th Cir. 2015) (describing a § 1104 claim as equitable); *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956, 961 n.7 (9th Cir. 2015) ("[A]n action for breach of fiduciary duty is an action in equity[.]"); *In re Hutchinson*, 5 F.3d 750, 757 (4th Cir. 1993) ("Appellants' claim for breach of fiduciary duty is equitable in nature[.]").

What about Patterson's claim that United and Optum engaged in prohibited transactions? *See* 29 U.S.C. § 1106. Section 1106 proscribes two categories of conduct relevant here. First, plan fiduciaries may not transact business on the plan's behalf with any "party in interest." *Id.* § 1106(a)(1). Second, those fiduciaries may not deal with the plan's assets in their own interest. *Id.* § 1106(b)(1). As tailored to Patterson's standing, properly defined, the only plausible accusation is that Optum improperly solicited and retained $25,000. In turn, the only logical fit between this accusation and the prohibited transactions statute is the prohibition on self-dealing with plan assets. *See id.* § 1106(b)(1). That raises the question of whether Patterson's § 1106(b)(1) claim rests on an equitable basis.

We think so. The facts underlying both the breach of fiduciary duty and prohibited transactions claims are identical. In this type of scenario, where a fiduciary uses plan funds "for its own purposes," it violates both of these ERISA duties. *Pipefitters Loc. 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*, 722 F.3d 861, 868–69 (6th Cir. 2013); *see also Hi-Lex Controls, Inc. v. Blue Cross & Blue Shield of Mich.*, 751 F.3d 740, 750–52 (6th Cir. 2014). The fiduciary duties ERISA imposes—which we have already concluded give rise to an equitable claim here— are "undeniably broader than the prohibition against self-dealing." *Pipefitters Loc. 636 Ins. Fund*, 722 F.3d at 869. Patterson's claim of a prohibited transaction for impermissibly collecting his $25,000, then, also rests on an equitable basis. For the same reason we deemed his requested relief for breach of fiduciary duty equitable in nature, so too for the prohibited transactions claim.

Defendants see things differently. To their eyes, Patterson's claims are different in kind than those in a trio of Supreme Court decisions. *Montanile*, 577 U.S. at 144; *Sereboff*, 547 U.S. at 364–68; *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 218 (2002). Those cases involved equitable lien by agreement claims brought by plan fiduciaries against

beneficiaries.  Yet here, they continue, Patterson's settlement agreement with the plan gives rise not to an equitable lien by agreement but rather a contractual claim.  In reality, Patterson's claims fall outside this dichotomy.  He alleges breach of fiduciary duty and engagement in prohibited transactions, two claims completely distinct from an equitable lien by agreement or a breach of contract claim.  Because both theories Patterson puts forth rest on an equitable basis, they may proceed.

Defendants likewise believe that no breach could have occurred because Optum was not acting in a fiduciary capacity when it entered into the settlement agreement with Patterson.  *See McLemore v. Regions Bank*, 682 F.3d 414, 422 (6th Cir. 2012).  True or not, the district court did not decide the issue because it did not have to, leaving us with an insufficiently developed record to address it now.  So we leave it to the district court to conduct in the first instance the "granular" inquiry of whether Optum was acting as a fiduciary at the relevant time.  *See Chelf v. Prudential Ins. Co. of Am.*, 31 F.4th 459, 464–65 (6th Cir. 2022).

(b).  As for step two, the relief Patterson requests is also equitable.  To recover the $25,000 Patterson paid, his complaint seeks disgorgement of the $25,000.  On appeal, the parties debate whether equitable restitution might be another manner of available relief.  In the abstract, both disgorgement and equitable restitution may be pursued through § 1132(a)(3).  Disgorgement is an equitable remedy that "deprive[s] wrongdoers of their net profits from unlawful activity." *Liu v. SEC*, 140 S. Ct. 1936, 1942 (2020) (so recognizing in the context of the Securities Exchange Act); *see also Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 419–20 (3d Cir. 2013) ("Edmonson's claim for disgorgement . . . is an equitable remedy available under ERISA.").  Like disgorgement, equitable restitution "seeks to punish the wrongdoer" by stripping him "of ill-gotten gains." *Messing v. Provident Life & Accident Ins. Co.*, 48 F.4th 670, 683 (6th Cir. 2022) (internal quotations omitted); *see also Helfrich v. PNC Bank, Ky., Inc.*, 267 F.3d 477, 481 (6th Cir. 2001).

Relief in the universe of transferred assets is generally limited, however, by an important caveat—the tracing requirement.  That is certainly true for equitable restitution, where an award must trace back to "particular funds or property in the defendant's possession." *Zirbel v. Ford Motor Co.*, 980 F.3d 520, 524 (6th Cir. 2020) (quoting *Knudson*, 534 U.S. at 214); *see also Cent.*

*States, S.E. & S.W. Areas Health & Welfare Fund v. First Agency, Inc.*, 756 F.3d 954, 960 (6th Cir. 2014). Although we have not so held, there is reason to believe the tracing requirement also applies to disgorgement in ERISA cases between two private parties. *See Teets v. Great-West Life & Annuity Ins. Co.*, 921 F.3d 1200, 1225 (10th Cir. 2019) ("The tracing requirement . . . for equitable restitution also applies to . . . disgorgement of profits but may be modified in certain limited circumstances." (citing *Knudson*, 534 U.S. at 214 n.2)). *But see Liu*, 140 S. Ct. at 1953–54 (Thomas, J., dissenting) ("Disgorgement reaches further [than equitable restitution] because it has no tracing requirement."); *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 373 (2d Cir. 2011) (declining to apply the tracing requirement in a government enforcement action for disgorgement but noting its applicability in a private-party action for a constructive trust). We leave more robust analysis of the issue to a future case because, as explained next, Patterson adequately pleaded any tracing requirement tied to his disgorgement claim.

Defendants contend that Patterson cannot trace the funds he professedly paid. The district court agreed, finding that the plan, "not the named Defendants . . . possess[ed]" the $25,000 and any profit derived from those funds. But the complaint specifically alleges that Optum retained the payment for its own benefit, and did not deposit those monies into the plan. So Optum's legal obligation to pay the funds into the plan notwithstanding, we are required to accept at the pleading stage Patterson's plausible allegation that it did not do so. *Hobart-Mayfield, Inc. v. Nat'l Operating Comm. on Standards for Athletic Equip.*, 48 F.4th 656, 663 (6th Cir. 2022). As for United, Patterson's allegations that the company "controlled" its "subsidiary," Optum, and that Optum sought reimbursement on United's behalf, are sufficient to retain United as a viable defendant past the motion to dismiss stage. *See Midwest Terminals of Toledo Int'l v. Int'l Longshoremen's Ass'n*, No. 22-1330, 2023 WL 4586172, at \*5 (6th Cir. July 18, 2023) (requiring "sufficient facts to render it facially plausible that an agency relationship was present" to survive a motion to dismiss).

Even so, say defendants, the complaint fails to identify a "specifically identified fund" in their possession, a component of the tracing requirement. *See Montanile*, 577 U.S. at 144–45. Not so. The complaint explicitly requests the return of the $25,000 it says Patterson paid to Optum and Optum retained. In this way, it resembles a recent suit in which we found a

specifically identified fund for tracing purposes. *See Zirbel*, 980 F.3d at 523–25. In *Zirbel*, an insurance plan claimed equitable restitution from a beneficiary under § 1132(a)(3). The beneficiary received oversize pension payments under a plan that required her to return "the amount of the overpayment." *Id.* at 522–23. We held that the plan had "a right to recover a particular fund: the overpayment." *Id.* at 524. Here, the $25,000 payment Patterson made to Optum is likewise a specifically identified fund allegedly in Optum's possession. As a result, it is potentially susceptible to recovery under § 1132(a)(3), even if commingled with other funds. *Id.* It may turn out, of course, that Optum's handling of the $25,000 has placed it beyond § 1132(a)(3)'s reach. If in the end Optum spent the $25,000 on nontraceable items or transferred it to the plan, as two examples, Patterson can no longer invoke disgorgement and equitable restitution. *See id.*; *Montanile*, 577 U.S. at 144–46. For now, though, Patterson has made out a colorable equitable claim.

2. As an ERISA plan beneficiary, Patterson also asserts his right to sue for "appropriate relief under section 1109" of ERISA. 29 U.S.C. § 1132(a)(2). Critical here is the fact that § 1109 only contemplates suit to remedy harm to the plan itself. *Russell*, 473 U.S. at 140; *Hawkins v. Cintas Corp.*, 32 F.4th 625, 631 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 564 (2023) (mem.); *Smith v. Provident Bank*, 170 F.3d 609, 616 (6th Cir. 1999). True, harm to a plan may manifest as harm to an individual's plan account. *See LaRue v. DeWolff, Boberg & Assocs.*, 552 U.S. 248, 256 (2008) ("[A]lthough § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."). But individual injury is not cognizable under § 1132(a)(2) unless it is also plan harm. *Loren*, 505 F.3d at 608; *see also LaRue*, 552 U.S. at 261 (Thomas, J., concurring) ("The plain text of § 409(a), which uses the term 'plan' five times, leaves no doubt that § [1132](a)(2) authorizes recovery only for the plan."). As we have explained, Patterson has made no plausible allegations of plan harm. So this second cause of action offers him no viable path to recovery.

Patterson urges that his claims under § 1132(a)(2) are cognizable, analogizing his case to a trio of others, including two of our own. *See LaRue*, 552 U.S. 248; *Guyan Int'l, Inc. v. Prof. Benefits Adm'rs, Inc.*, 689 F.3d 793 (6th Cir. 2012); *Tullis v. UMB Bank, N.A.*, 515 F.3d 673 (6th

Cir. 2008). In each case, a plaintiff alleging individualized harms was permitted to seek relief under § 1132(a)(2). But the allegations of individualized harm in those cases also represented harm to the plan itself, and thus were cognizable under § 1132(a)(2). *LaRue*, 552 U.S. at 256 ("[Section 1132(a)(2)] does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."); *Guyan Int'l*, 689 F.3d at 800 (plaintiffs' claims could proceed because they sought "recovery on behalf of each Plaintiff's respective Plan"); *Tullis*, 515 F.3d at 680–81 (harms to individual plan accounts were cognizable under § 1132(a)(2) because the accounts contained plan assets); *see also LaRue*, 552 U.S. at 262 (Thomas, J., concurring) ("In my view [the losses to petitioner's individual 401(k) account] were [losses to the plan], because the assets allocated to petitioner's individual account were plan assets."). Here, on the other hand, the only injury Patterson has alleged is the loss of $25,000, an injury entirely divorced from the plan.

3. As an alternative basis for dismissing both of Patterson's claims, defendants renew the argument they made below—that the complaint's facts do not state a claim for breach of fiduciary duty or prohibited transactions. The district court did not address the issue because it was not necessary to do so. By and large, then, we leave it to the district court to take up the argument in the first instance, including examining whether Patterson's claims are subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b).

In the interest of judicial economy, however, we address the merits insofar as they relate to defendants Swagelok and the plan attorneys. *See Fisher v. Perron*, 30 F.4th 289, 296 (6th Cir. 2022) (confirming our discretion to affirm a complaint's dismissal on "any ground supported by the law and the record" (citation and quotation omitted)). Patterson's viable claims under § 1132(a)(3) for breach of fiduciary duty and engagement in prohibited transactions extend only to United and Optum. In his complaint, Patterson states that the plan's attorneys disavowed the existence of a plan document in one round of litigation but produced the document in a subsequent suit, giving rise to a plausible inference of unlawful activity. As United administered the plan, retained its attorneys, and "controlled" Optum, it is tied to the allegedly wrongful activity. So too for Optum, given its role as United's agent seeking reimbursement.

Defendants Swagelok and the plan attorneys, however, are implicated only through implausible contentions that they participated in a large-scale scheme. The facts of the landmark *Twombly* decision illustrate the inadequacy of these assertions. 550 U.S. at 544. *Twombly* involved claims of an illegal anticompetitive conspiracy among telephone and internet service providers. *Id.* at 550–51. Those claims, however, rested on "descriptions of parallel conduct and not on any independent allegation of actual" conspiratorial agreement, meaning the plaintiffs failed to state a claim. *Id.* at 564. For the same reason, then, Patterson's complaint falls short of stating a claim against defendants other than United and Optum—his experience alone does not give rise to a plausible inference that those defendants played a role in any conspiracy.

This is true even though ERISA allows for co-fiduciary liability. *See* 29 U.S.C. § 1105. Co-fiduciary liability means that one plan fiduciary may be jointly liable for another fiduciary's breach if the first fiduciary knowingly participates in or conceals the second fiduciary's breach, or knows of the breach but makes no reasonable effort to remedy it. *Id.* § 1105(a)(1), (3). Patterson, however, makes no claim that Swagelok or the plan's attorneys possessed the requisite knowledge. Co-fiduciary liability may also attach if a fiduciary's breach of its own duty enables a co-fiduciary to breach its obligations. *Id.* § 1105(a)(2). In the context of the purported scheme alleged by Patterson, liability under this provision would require Patterson to argue that the plan's attorneys committed a breach of their own. He has not plausibly done so.

III.

That leaves one loose thread to tie up. We see no error in the district court's denial of leave to amend the complaint on behalf of a putative class. *See Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022) (applying de novo review). The proposed amendment was futile as it eliminated (not added) facts. As we have stated, the flaw at the heart of Patterson's theory that other insureds were injured was the absence of facts to suggest those injuries actually occurred. Without those facts, the new class action complaint on behalf of a putative class would not survive a motion to dismiss. *See Doe v. Mich. State Univ.*, 989 F.3d 418, 424–25 (6th Cir. 2021).

*          *          *          *          *

At day's end, Patterson is left with cognizable claims for breach of fiduciary duty and engagement in prohibited transactions against United and Optum. Section 1132(a)(3) offers the only viable route for recovery against defendants. And Patterson's relief is limited to obtaining return of his $25,000 settlement payment. Consistent with these conclusions, the district court's dismissal of Patterson's breach of fiduciary duty and prohibited transactions claims is reversed and remanded. The remainder of its decision is affirmed.