NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0471n.06

Case No. 22-1249

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Nov 13, 2023

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| T&T MANAGEMENT, INC., | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) | |
| CITY OF DETROIT, MICHIGAN, | ) | |
| Defendant-Appellee. | ) | OPINION |

Before:  CLAY, KETHLEDGE, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.**   T&T Management, Inc. claims to lease a Detroit property owned by HRT Enterprises.  A 2002 state-court judgment in an inverse-condemnation action required the City of Detroit to make monthly payments to T&T while T&T leased the property. After the City of Detroit determined that T&T no longer leased the property, it ceased making the monthly payments.  T&T moved to enforce the judgment against the City of Detroit in state court. When that failed, it tried federal court, bringing a takings claim and a due-process claim under 42 U.S.C. § 1983 against the City of Detroit.  Because T&T's takings claim is barred by collateral estoppel and its due-process claim is barred by the statute of limitations, we affirm the district court's dismissal of T&T's complaint.

## I.

*Factual background and state-court proceedings*.  We accept the following facts, taken primarily from T&T's complaint, as true for purposes of deciding this appeal.  *See Patterson v.*

*United HealthCare Ins. Co.*, 76 F.4th 487, 492 (6th Cir. 2023). T&T Management is the successor-in-interest to Merkur Steel Supply, a company T&T acquired in 2007. In 1997, Merkur leased property located in Detroit, Michigan, from HRT Enterprises. The lease had an initial term of five years, plus two five-year option periods, potentially extending the lease to 2012. If Merkur held over after the lease expired in 2012, the lease would then automatically convert to a month-to-month tenancy.

The City of Detroit condemned certain areas around the land Merkur leased when it planned to expand the Coleman A. Young International Airport. *Merkur Steel Supply, Inc. v. City of Detroit*, 680 N.W.2d 485, 494 (2004). In 1999, Merkur sued the City of Detroit in state court, alleging that the City inversely condemned Merkur's property rights because the City of Detroit's condemnation of nearby land and other actions prevented Merkur from redeveloping a vacant part of the property. *Id.* In 2002, a jury found that the City of Detroit partially inversely condemned Merkur's property rights by preventing Merkur from using the vacant land to expand its business. The judgment obligated the City of Detroit to pay Merkur almost $8 million plus $3,800 per month until one of three events occurred: (1) Merkur stopped leasing the property, (2) the City bought the property, or (3) the City lifted the restrictions that prevented Merkur's planned construction.

The City of Detroit has never bought the property or lifted its restrictions, so it sent Merkur, and later, T&T, $3,800 payments every month until June 2017, when it suddenly stopped making payments. The City of Detroit found that T&T "ha[d] ceased to lease the property" because HRT's president admitted during a separate legal proceeding that Merkur vacated the property when it went out of business, and HRT did not lease the property to anyone else. R. 1, PageID 61; *see* R. 5-2, PageID 152. That, according to the City of Detroit, ended the lease, triggering one of the three events that ended the City's obligation to continue the monthly payments. About two and a

half years later, in December 2019, T&T filed a motion in state court to enforce the 2002 judgment and compel the City of Detroit to resume the monthly payments. T&T filed the motion in the original case that its predecessor won against the City of Detroit. The state court heard oral argument and denied the motion from the bench. It found that "the lease didn't go past [2012]." R. 5-3, PageID 168.

T&T filed a motion for the state trial court to reconsider its decision, but the trial court denied that motion. T&T then sought leave to appeal to the Michigan Court of Appeals, but that court declined to review the case "for lack of merit in the grounds presented." R. 1, PageID 122. The Michigan Supreme Court subsequently denied T&T leave to appeal on December 22, 2020, ending the state-court proceedings.

*Federal proceedings*. On April 22, 2021, T&T, nearly four years after the City of Detroit ceased making monthly payments, filed this action in the district court. Its complaint purports to bring the following claims under 42 U.S.C. § 1983: (1) denial of procedural due process against the City (for terminating payments without prior court approval), (2) denial of procedural due process against Michigan's courts, (3) a takings claim against the City, and (4) a judicial-takings claim against Michigan's courts. The district court granted the City's motion to dismiss. It held that T&T's claims against the Michigan courts were barred by the *Rooker-Feldman* doctrine, that the takings claim against the City was barred by collateral estoppel, and that the due-process claim against the City failed on the merits. T&T timely appealed.

## II.

We review the district court's decision to grant a motion to dismiss under Rule 12(b)(6) de novo. *See Lindke v. Tomlinson*, 31 F.4th 487, 495 (6th Cir. 2022). Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

Under this pleading standard, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A pleading that offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III.

On appeal, T&T argues that the district court erred in dismissing its complaint because it has stated § 1983 claims against the City of Detroit for violations of the Takings Clause and the Due Process Clause. We address each argument in turn.

## A.

*T&T's takings claim.* For its takings claim, T&T asserts that it has a leasehold property interest in the subject property and that the City of Detroit, by terminating the monthly payments it was required to make to T&T pursuant to the 2002 state-court judgment, deprived T&T of its property rights without just compensation. As a remedy, T&T wants the federal courts to enforce the 2002 judgment and order the City of Detroit to commence making those payments retroactive to July 2017. T&T sought, and was denied, the same relief in state court. Collateral estoppel thus bars T&T's takings claim.

Collateral estoppel—or issue preclusion—prevents parties from "raising an argument that they already fully litigated in an earlier legal proceeding." *Anderson v. City of Blue Ash*, 798 F.3d 338, 350 (6th Cir. 2015). It bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs

in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quotation omitted). We apply Michigan's collateral estoppel rules to determine whether the state-court decision bars T&T's § 1983 takings claim. *See Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001); *see also Lumbard v. City of Ann Arbor*, 913 F.3d 585, 590 (6th Cir. 2019). Generally, under Michigan law, a party must satisfy three requirements for courts to apply collateral estoppel to bar relitigation of a claim: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845–46 (Mich. 2004) (alteration in original; quotation omitted). But Michigan law does not require mutuality when a party asserts collateral estoppel defensively. *Id.* at 852.

The City of Detroit has established that collateral estoppel applies. The 2002 judgment required the City of Detroit to pay T&T $3,800 per month as long as T&T leased the property. In denying T&T's motion to enforce the 2002 judgment, the state court necessarily determined that T&T no longer leases the subject property. "An issue is necessarily determined if it is essential to the judgment." *In re Markowitz*, 190 F.3d 455, 462 (6th Cir. 1999) (citing *People v. Gates*, 452 N.W.2d 627, 631 (Mich. 1990)). Whether T&T continued to lease the property was essential to the state court's decision. And the state court's decision is a final judgment. T&T and the City of Detroit had a full and fair opportunity to litigate the matter in state court. As mentioned above, the state trial court denied T&T's motion to enforce judgment. The state trial court also declined to reconsider its decision after T&T sought reconsideration. T&T sought (and was denied) relief from the Michigan Court of Appeals and Michigan Supreme Court. And the City of Detroit has

asserted collateral estoppel defensively, so it does not have to show mutuality of estoppel. *See Monat*, 677 N.W.2d at 852.

T&T argues that collateral estoppel does not apply because the Michigan Court of Appeals, in *Latimer v. William Mueller & Son, Inc*., stated that the question must be "put in issue by the pleadings," and Michigan's civil rules do not include a motion to enforce a judgment in their definition of "pleading." 386 N.W.2d 618, 627 (Mich. Ct. App. 1986); *see* MICH. CIV. R. 2.110(A). But there is no indication that the *Latimer* court used the word "pleading" as narrowly as T&T suggests. In seeking to enforce the 2002 judgment, T&T put the question of whether it still leases the property and is entitled to monthly payments at issue and litigated that question. Holding that collateral estoppel does not apply to a motion to enforce a judgment would lead to parties always getting multiple opportunities to pursue post-judgment motions. That seems like an absurd result. Furthermore, the Michigan Supreme Court, in outlining the collateral estoppel requirements, has not announced a put-in-issue-by-the-pleadings component.

T&T also argues that it can relitigate its motion to enforce the 2002 judgment in federal court because it could not obtain review of the state trial court's decision from the Michigan Court of Appeals and Michigan Supreme Court. Michigan courts follow the Restatement (Second) of Judgments, which "permits relitigation when 'the party against whom preclusion is sought could not, *as a matter of law*, have obtained review of the judgment in the initial action[.]'" *Monat*, 677 N.W.2d at 847 (alteration omitted) (quoting Restatement (Second) of Judgments § 28(1)). But the official commentary to the Restatement provides that the relitigation exception "does [not] apply when there is discretion in the reviewing court to grant or deny review and it is denied." Restatement (Second) of Judgments § 28(1), Comment. Here, the Michigan appellate courts had

discretion to grant or deny review of T&T's motion to enforce judgment, so the relitigation exception does not apply.

**B.**

*T&T's due-process claim.* We draw the limitations period for § 1983 actions from the general or residual statute of limitations for personal-injury actions in the state where the claim arose. *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (citing *Wilson v. Garcia*, 471 U.S. 261, 275–76 (1985) and *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)). Michigan's general statute of limitations for personal-injury actions is three years. MICH. COMP. LAWS ANN. § 600.5805(2); *see Est. of Majors v. Gerlach*, 821 F. App'x 533, 537 (6th Cir. 2020) ("Pursuant to this framework, we have held that § 1983 claims in Michigan are subject to a three-year statute of limitations." (citing *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam))). And "the statute of limitations [] begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The three-year statute of limitations for T&T's due-process claim against the City of Detroit began running on June 23, 2017, when the City informed T&T that it was terminating the monthly payments without first seeking a judicial determination that it could do so. *See id.* But T&T did not file its federal lawsuit until April 22, 2021, nine months after the three-year limitations period elapsed. T&T argues that the statute of limitations was tolled while it litigated the motion to enforce judgment in state court because *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City,* before it was overruled in June 2019, required T&T to exhaust its state-law remedies before filing a takings suit in federal court. 473 U.S. 172 (1985), *overruled by Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019). But *Williamson County*'s exhaustion requirement

never applied to due-process claims, even if they stemmed from land-use decisions. *See Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 893–94 (6th Cir. 1991). "[A] procedural due process claim is instantly cognizable in federal court without requiring a final decision" from the state adjudicator because "the allegedly infirm process is an injury in itself." *Id.* at 894 (quoting *Hammond v. Baldwin,* 866 F.2d 172, 176 (6th Cir. 1989)). T&T alleges the City's process was infirm because it terminated payments "without seeking permission from any Court of competent jurisdiction to do so." R. 1, PageID 17. But that alleged infirmity materialized more than three years before T&T sued in federal court. Thus, the statute of limitations bars T&T's due-process claim.[1]

## IV.

For these reasons, we **AFFIRM** the district court's judgment.

---

[1] The district court interpreted T&T's complaint as stating claims against Michigan's courts, and it dismissed those claims pursuant to the *Rooker-Feldman* doctrine. Indeed, T&T appears to complain that the state courts caused it harm, alleging that T&T was "denied due process in the Michigan courts" and that the "judicial endorsement" of the City of Detroit's taking "effected a change in established state law." R. 1, PageID 18, 20. T&T even clarified in its response to the City of Detroit's motion to dismiss that its complaint "alleges a judicial taking." R. 6, PageID 202. But T&T never made Michigan's courts or any part of Michigan's government a party to this case. We cannot consider claims against a party that is not before us. *Cf. Inc. Vill. of Lynchburg v. Douglas N. Higgins, Inc.*, 822 F.2d 1088, 1987 WL 36148, at *2 (6th Cir. 1987) (unpublished table decision) (holding that district court had diversity jurisdiction because company that allegedly thwarted such jurisdiction was not a party to the suit).